No. 24116.

NICHOLAS JOHN DIGIALLONARDO *v.* THE PEOPLE OF THE STATE OF COLORADO.

No. 24213.

ANTONIO CICCARELLI *v.* THE PEOPLE OF THE STATE OF COLORADO.

(488 P.2d 1109)

Decided September 20, 1971. Rehearing denied in 24213 October 12, 1971.

562

MENIN AND HARTHUN, SAMUEL D. MENIN AND CARL L. HARTHUN (No. 24116) and MELLMAN, MELLMAN AND THORN, ISAAC MELLMAN (No. 24213), for plaintiffs in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, MICHAEL T. HALEY, Assistant, ARTHUR P. ROY, Assistant, for defendant in error.

*In Department.*

Opinion by RONALD J. HARDESTY, District Judge.*

PLAINTIFFS in error were tried together but have prosecuted separate appeals. The assignments of error being similar, they are hereby consolidated for decision. The plaintiffs in error will hereinafter be referred to as defendants or by name.

The facts adduced at trial reveal the following: In early September 1966 the victim, Kaylor Glasgow, received a telephone call from a friend, Jean Wilson, requesting him to come to a bar where she was employed. The next day Glasgow went to the bar and was introduced to Digiallonardo, who stated he would like to discuss the possibility of selling some diamonds to Glasgow. Glasgow was a traveling salesman who as a sideline would purchase diamonds during his travels and bring them to Denver and sell them at a profit. Digiallonardo then introduced Glasgow to Ciccarelli, who said he had some diamonds worth $100,000 for which he wanted $12,000.

Arrangements were made for Glasgow to examine the diamonds that evening at Jean Wilson's apartment. Glasgow met Digiallonardo at Jean Wilson's apartment that evening and the diamonds were discussed, and Digiallonardo told Glasgow that the diamonds were worth $100,000. Glasgow indicated that he could obtain the $12,000, and Digiallonardo telephoned Ciccarelli, who brought the diamonds to the apartment. Glasgow exam-

ined the stones, which were 21 stones of marquise, heart-shaped, and round cuts. He testified they looked like diamonds and he supposed they were diamonds, but said before making the deal he wished to call an expert to examine the stones.

The next day Glasgow obtained the $12,000 from the bank and met the defendants, who pressured him to buy the stones on the spot, but he would not complete the deal until his expert examined the stones. Ciccarelli did not want anyone else involved in the transaction and left for Kansas City. Digiallonardo then told Glasgow he should try to make a deal with Ciccarelli. Later Ciccarelli called Glasgow stating that he was returning to Denver and would take less money for the diamonds.

On September 8, Glasgow met the defendants at a motel and settled on a price of $7,500. Glasgow again requested that his expert be allowed to examine the stones. Ciccarelli refused and said they should make the exchange and then if Glasgow was not satisfied he could have his money back. Glasgow testified that he relied on the defendants' statements that the diamonds were authentic, made the exchange, and then took the stones to his expert for examination. The expert determined that they were phony. Glasgow returned to the motel, but the defendants were gone.

Glasgow reported the incident to the police and kept the phony diamonds in his safe at his home and in the trunk of his car, where they remained until they were picked up by the F.B.I.

No evidence was introduced during the trial concerning the value of the stones; however, Glasgow's expert testified that the retail price for diamonds of that size was forty thousand to sixty thousand dollars, and the wholesale price would be approximately twenty thousand to twenty-five thousand dollars.

Upon this evidence the jury found the defendants guilty of confidence game and conspiracy to commit confidence game. Motions for a new trial were denied, as

well as Ciccarelli's motion to set aside the verdict on the basis of newly discovered evidence, and the defendants were sentenced to the penitentiary for terms of not less than one year nor more than five years on both counts, the sentences to run consecutively.

I.

Defendants first allege that the information upon which they were charged was defective in that it failed to allege, in the first count, that the property taken "belonged to the victim," and that the second count charging conspiracy alleging the crime as being against the "monies of Kaylor Leon Glasgow".

The first count of the information reads in pertinent part as follows:

"Antonio Ciccarelli and Nicholas John Digiallonardo did unlawfully and feloniously obtain from Kaylor Leon Glasgow money of the value of $7,500 by means and use of the confidence game * * *."

The second count of the information, charging conspiracy, reads as follows:

"* * * Antonio Ciccarelli and Nicholas John Digiallonardo did then and there unlawfully and feloniously agree, conspire and cooperate with each other and with some person or persons to the District Attorney unknown, to do and to aid in the doing by them, or some one or more of them, * * * of an unlawful act, namely, a felony against the monies of Kaylor Leon Glasgow, which felony was the crime of confidence game, and is the transaction described in Count One of this information; * * *"

C.R.S. 1963, 40-10-1, dealing with confidence game provides in part as follows:

"* * * Any person who obtains, any money, * * * by any means commonly called confidence games, by which advantage is taken of the confidence reposed by the person from whom the money, * * * is obtained, in the person who uses such means, is guilty of a felony * * * *"

C.R.S. 1963, 40-10-2 deals with the sufficiency of an

information charging a violation of 40-10-1 and provides as follows:

"In every indictment or information charging a violation of Section 40-10-1, it shall be a sufficient description of the offense to charge that the accused did, on a day certain, unlawfully and feloniously obtain, from the person named in the indictment or information as the victim of the accused, the money, * * * belonging to the victim by means of confidence game."

In the case of *Arnett v. People,* 91 Colo. 56, 11 P.2d 806 (1932), this court has held that it is not necessary to allege ownership of the money or property obtained from the victim. It is true this case was decided prior to the enactment of C.R.S. 1963 40-10-2; however, the decisions of this court concerning the sufficiency of an information have repeatedly held that an information is sufficient if it advises the defendant of the charge he is facing so that he can adequately defend himself and be protected from another prosecution for the same offense. *Ciccarelli v. People,* 147 Colo. 413, 418; 364 P.2d 368 (1961); *Wright v. People,* 116 Colo. 306, 181 P.2d 447 (1947). The information in the case at bar, viewed as a whole, fulfills these requirements.

## II.

Defendants next allege that the court erred in refusing to issue subpoenas duces tecum in blank.

In 1968, Rule 17(c), Colorado Rules of Criminal Procedure, concerning the issuance of subpoenas duces tecum provided in part as follows:

"Upon order of the court to be issued ex parte a subpoena may also command the person to whom it is directed to produce the books, papers, documents, photographs or other objects designated therein. * * *"

Rule 17(a), Colorado Rules of Criminal Procedure does provide that when requested subpoenas shall be issued by the clerk in blank, but it is noted that Rule 17(c) then required an order of court before the subpoena duces tecum should issue. That was a discretionary

act and it was not error for the court to require that the subpoena contain sufficient information to enable it to determine whether the order should issue.

## III.

Defendants next allege that the evidence presented at trial was insufficient to prove the crimes charged.

 The sufficiency of the evidence is a jury question once the prosecution has established a prima facie case. In considering the evidence presented at trial in the light of *Marshall, Jr. v. People,* 160 Colo. 323, 417 P.2d 491 (1966); *McBride v. People,* 126 Colo. 277, 248 P.2d 725 (1952); and *Kelly v. People,* 121 Colo. 243, 215 P.2d 336 (1950), we feel that the prosecution has established such prima facie case. There was evidence of a bogus token and a swindling operation involving some measure of the victim's confidence, which supports the charge of confidence game.

██ As to the charge of conspiracy to commit confidence game, the elements of the crime, as stated in *Marshall, Jr. v. People, supra,* "The three elements necessary to prove a conspiracy, to wit: (1) a real agreement, combination or confederation, (2) with a common design between two or more persons, (3) to accomplish an unlawful purpose amounting to a crime," were clearly established.

## IV.

██ With respect to another assignment of error, we hold that it was not necessary that the People prove the actual value of the stones or the value of the bogus token.

In *McBride v. People, supra,* the crime of confidence game was defined as follows:

"The essence of the offense is the plan and purpose of the perpetrator to swindle another of his money or property. To swindle is to trick and cheat another of his possessions by falsehood, cunning or conniving scheme. 'Confidence game is any swindling operation in which advantage is taken of a confidence reposed by the victim

in the swindler.' *Lace v. People,* 43 Colo. 199, 204, 95 P. 302. Any plan or scheme of trickery wherein any false token or thing is made use of to accomplish the intended result constitutes a 'confidence game.' " *Id.*

V.

The trial court properly denied defendant's motion for a new trial on the basis of newly discovered evidence. Subsequent to the trial defendant filed a motion to set aside the verdict on the basis of newly discovered evidence. Attached to this motion was the following affidavit of Mr. Glasgow, the complaining witness at the trial:

"KAYLOR LEON GLASGOW, of lawful age being duly sworn upon oath states that since the trial of the above case he, on a social occasion, saw the defendant Antonio Ciccarelli and another man at the same place. That in viewing the two men he now feels that his absolute identification of defendant Antonio Ciccarelli is doubtful and that his testimony may have been mistaken.

"Affiant advises the Court that there is a possibility that his identification was wrongful and an injustice may have been done to defendant Ciccarelli."

Defendant asserts that the trial court, prior to denying the motion, should at least have held a hearing to determine whether the identification by Glasgow was authentic or not. We disagree.

A defendant in a criminal case is not entitled to a new trial on the grounds of newly discovered evidence unless he establishes the following prerequisites: (1) that the evidence was discovered after the trial and defendant exercised diligence prior to trial; (2) that the evidence is material to the issues involved and not merely cumulative or impeaching; and (3) that on a new trial the newly discovered evidence would probably produce an acquittal. *Kelley v. People,* 166 Colo. 322, 443 P.2d 734 (1968); *Isbell v. People,* 158 Colo. 126, 405 P.2d 744 (1965); *Fine v. People,* 145 Colo. 514, 360 P.2d 682 (1961). These prerequisites must be strictly established by the

defendant since motions for new trials based on newly discovered evidence are looked on with great disfavor by the courts, and denial of the motion by the trial court will be reversed only on a showing of gross abuse of discretion. *Miller v. People,* 92 Colo. 481, 22 P.2d 626 (1933); *Ives v. People,* 86 Colo. 141, 278 P. 792 (1929); *Gasper v. People,* 83 Colo. 341, 265 P. 97 (1928); *Edwards v. People,* 73 Colo. 377, 215 P. 855 (1923).

The leading Colorado case dealing with motions for new trial based on recanting testimony is *Blass v. People,* 79 Colo. 555, 247 P. 177 (1926), in which it was said:

"The ground of the motion for a new trial was based entirely upon the recanting affidavit of Rocco, who was the principal witness on behalf of the people.

"The question of our determination is whether a recantation by a witness who testified on behalf of the people necessarily required the trial court to grant the defendant a new trial. We must answer the question in the negative. Such a rule would imperil the proper administration of justice. *People v. Shilitano,* 218 N.Y. 161, 112 N.E. 733, L.R.A. 1916F, 1044. The power to grant a new trial to a convicted felon would no longer rest in the sound discretion of the court, but the witness who testified against him upon the trial."

" 'It cannot be said that, as a matter of law, a new trial should be granted whenever an important witness against the defendant shall make an affidavit that he committed perjury in his testimony. If that were so, justice would be defeated in many grave cases.' *People v. Tallmadge,* 114 Cal. 427, 46 Pac. 282.

" 'There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character.' *People v. Shilitano, supra.*

"We have many times announced that motions for new trial, based upon the ground of newly discovered evidence, are to be regarded with disfavor. *Edwards v.*

*People,* 73 Colo. 377, 394, 215 Pac. 855; *Eachus v. People,* 77 Colo. 445, 236 Pac. 1009. The granting or refusing of such a motion rests within the sound discretion of the court. *Wiley v. People,* 71 Colo. 449, 207 Pac. 478; *Eachus v. People, supra.*" 79 Colo., at 557-558.

In accord with this statement of the rule are the following cases: *Bowland v. People,* 136 Colo. 57, 314 P.2d 685 (1957); *Dockerty v. People,* 96 Colo. 338, 44 P.2d 1013 (1935); *Miller v. People, supra; Ives v. People, supra;* and *Quinn v. People,* 60 Colo. 217, 152 P. 148 (1915).

In the case at bar, Glasgow's identification of the defendant at the trial was based on his viewing defendant at close range on numerous occasions, for substantial periods of time, over two days. Glasgow does not completely recant this trial identification of the defendant in his affidavit, but merely states that he may have been mistaken. We conclude that this affidavit does not warrant the granting of a new trial, and the trial judge connot be said to have abused his discretion in denying the motion. Since the trial judge presided at the trial and was in a position to determine the credibility of Glasgow, great weight should be given to the trial court's decision upon a motion of this character. *Glass v. People, supra.* Furthermore, it is highly doubtful that on a new trial this newly discovered evidence would probably produce an acquittal. Since it cannot be said that the trial court abused its discretion in denying defendant's motion for new trial based on newly discovered evidence, the denial of the motion should be affirmed by this Court.

The other assignments of error were considered and found to be without merit.

Judgments affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and FRANCIS W. JAMISON, retired County Judge,* concur.

---

*District Judge and County Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.