PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 99-4169

OTIS LOFTON,
          *Defendant-Appellant.*

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 00-4135

OTIS LOFTON,
          *Defendant-Appellant.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-98-264-PJM)

Argued: September 29, 2000

Decided: November 21, 2000

Before WIDENER, NIEMEYER, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Widener and Judge Niemeyer joined.

**COUNSEL**

**ARGUED:** Susan Marie Bauer, OFFICE OF THE FEDERAL PUB-LIC DEFENDER, Greenbelt, Maryland, for Appellant. Hollis Raphael Weisman, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Appellant Otis Lofton was tried and convicted by a magistrate judge, *see* 18 U.S.C.A. § 3401 (West 2000), of possession of a weapon on lands owned or administered by the National Park Service. *See* 36 C.F.R. § 1.2 (2000); 36 C.F.R. § 2.4 (2000). Lofton's conviction was affirmed by the district court, *see* 18 U.S.C.A. § 3402 (West 2000), and he appealed that decision to this court. Thereafter, Lofton filed with the magistrate judge a motion for a new trial, and we stayed the appeal of his conviction pending disposition of that motion. The magistrate judge denied the new trial motion, and the district court affirmed. Lofton appealed that decision to this court, and we consolidated the appeals. We now affirm Lofton's conviction and the denial of his motion for a new trial.

I.

One morning a detective with the United States Park Police was surveying the boundaries of Oxon Cove Park ("Oxon Cove" or the "park"), a park located in Maryland and administered by the National Park Service. When the detective heard gunshots coming from within the park, he called for assistance. The detective and the other officers waited at a gated entrance to the park. Shortly thereafter, Lofton and another man emerged from within the park. Both men were wearing what appeared to be "hunting attire" and Lofton was carrying a shotgun. Lofton was charged with violating 36 C.F.R. § 2.4(a)(1), which,

subject to certain exceptions, prohibits possessing, carrying, or using a weapon, trap, or net within lands owned or administered by the National Park Service.

At trial, Lofton contended that the park was required to give notice of the prohibition against carrying weapons. The government presented no evidence of such notice in its case-in-chief. The park manager, however, who was called as a defense witness, testified that "[t]here are signs on the bulletin board which you would see. The C.F.R. regulations which go into detail about—from anywhere from hunting to no fishing or all this, okay? So, on the boundaries, you would see boundary signs." J.A. 31.

The magistrate judge found Lofton guilty and imposed a $100 fine. On appeal, the district court agreed with Lofton that notice of the weapons ban was required. The district court nonetheless affirmed the conviction, concluding that the park manager's testimony that C.F.R. regulations were posted on a bulletin board was "barely" sufficient to satisfy the notice requirement. J.A. 126-27.

After the district court's ruling, and while the appeal of the conviction was pending in this court, Lofton's attorney sent an investigator to Oxon Cove to verify that the regulations were posted. According to the investigator, he found no such postings and asked the park manager if the regulations were posted anywhere in the park. She responded that they were not and had never been posted.

Convinced that the park manager had perjured herself during trial, Lofton filed with the magistrate judge a motion for a new trial based on the newly discovered evidence that no C.F.R. regulations were posted at the park and that the manager's trial testimony was incorrect. *See* Fed. R. Crim. P. 33. The magistrate judge denied the motion, concluding that the evidence could have been discovered before trial by the exercise of due diligence. Lofton appealed the denial of the new trial motion to the district court, which affirmed without comment.

## II.

Lofton first contends, as he did below, that the relevant regulations require that the park give specific notice of the prohibition against

weapons, and that his conviction must be reversed because the government gave no such notice. We disagree.

The possession and use of weapons in national parks is governed by 36 C.F.R. § 2.4, which, as is relevant to this action, prohibits possessing, carrying, or using a weapon, trap, or net. *See* 36 C.F.R. § 2.4(a)(1). While Lofton contends that the carrying of weapons is authorized on national park grounds unless specifically prohibited, we think regulation 2.4 quite clearly establishes a general rule *prohibiting* the use or possession of a weapon on national park grounds, subject to certain limited exceptions set out in the regulation.[1]

One of the exceptions set out in regulation 2.4 authorizes weapons "[a]t designated times and locations" in areas where "[t]he taking of wildlife is authorized by law in accordance with § 2.2 of this chapter." 36 C.F.R. § 2.4(a)(2)(i)(A). Under regulation 2.2, the taking of wildlife is prohibited except for authorized hunting in areas were hunting "is specifically mandated by Federal statutory law," or in areas where hunting "is specifically authorized as a discretionary activity under Federal statutory law if the superintendent determines that such activity is consistent with public safety and enjoyment, and sound resource management principles." 36 C.F.R. § 2.2(b) (2000). While there are statutes mandating that a given area be open to hunting, *see, e.g.*, 16 U.S.C.A. § 459f-4 (West 1993) (stating that "[t]he Secretary [of the Interior] *shall permit* hunting and fishing" at Assateague Island National Seashore (emphasis added)), and others allowing an area to be open to hunting, *see, e.g.*, 16 U.S.C.A. § 459b-6(c) (West 1993) (stating that "[t]he Secretary *may permit* hunting and fishing" in the Cape Cod National Seashore (emphasis added)), no such statute authorizes hunting at Oxon Cove.

---

[1]Lofton refers to regulation 1.10 as support for his argument that weapons are generally permitted. This regulation, however, merely illustrates and explains certain symbolic signs (such as the familiar wheelchair symbol denoting access for the physically handicapped) that may be used in parks. *See* 36 C.F.R. § 1.10 (2000). While one of the signs pictured is that of a rifle used to indicate an area where firearms are permitted, regulation 1.10 simply cannot be read as authorizing in all parks the activities that happen to be pictured in the signs.

Because there is no suggestion that any of regulation 2.4's other exceptions to the weapons ban are applicable to this case, Lofton's conduct falls squarely within that prohibited by regulation 2.4. And since regulation 2.4 does not require that parks give notice of the weapons prohibition, nor does it make carrying weapons illegal only in parks where such notice is given, the absence of any such notice is irrelevant. The publication in the Code of Federal Regulations of the general ban against the carrying of weapons in national parks provided sufficient notice to Lofton of the criminality of his conduct. *See, e.g.*, *United States v. Mitchell*, 209 F.3d 319, 323 (4th Cir.) ("The statute made perfectly clear . . . that Mitchell's possession of the firearm was unlawful. Mitchell's pleas for particularized notice thus run headlong into the fundamental principle that 'ignorance of the law is no excuse.'"), *cert. denied*, 121 S. Ct. 123 (2000).[2]

Lofton, however, contends that 36 C.F.R. § 1.7 requires that notice of the weapons ban must be provided. We disagree. Regulation 1.7 requires the public to be notified

> [w]henever the authority of § 1.5(a) is invoked to restrict or control a public use or activity, to relax or revoke an existing restriction or control, to designate all or a portion of a park area as open or closed, or to require a permit to implement a public use limit.

36 C.F.R. § 1.7(a) (2000). The required notice may be given by posting signs in conspicuous locations, making maps available at convenient locations, publishing a notice in a general circulation newspaper, or by using other appropriate methods. *See* 36 C.F.R. § 1.7(a)(1)-(4). Because the notice requirement of regulation 1.7 applies only to actions taken under the authority of regulation 1.5(a),

---

[2]Because regulation 2.4 generally prohibits possession of a weapon in a national park without requiring that notice of the ban be given, Lofton's contention at oral argument that lack of notice of the weapons ban is an affirmative defense to the charge clearly fails. And while lack of notice of criminal provisions can, in rare cases, be a constitutional impediment to conviction, *see, e.g.*, *Lambert v. California*, 355 U.S. 225, 229 (1957), Lofton does not make a constitutional challenge in this case.

the question then becomes whether the weapons ban at Oxon Cove was made pursuant to regulation 1.5(a).

Regulation 1.5(a) provides that, if "necessary for the maintenance of public health and safety, protection of environmental or scenic values, protection of natural or cultural resources, aid to scientific research, implementation of management responsibilities, equitable allocation and use of facilities, or the avoidance of conflict among visitor use activities" and "[c]onsistent with applicable legislation and Federal administrative policies," a park superintendent may:

> (1) Establish, for all or a portion of a park area, a reasonable schedule of visiting hours, impose public use limits, or close all or a portion of a park area to all public use or to a specific use or activity.

> (2) Designate areas for a specific use or activity, or impose conditions or restrictions on a use or activity.

> (3) Terminate a restriction, limit, closure, designation, condition, or visiting hour restriction imposed under paragraph (a)(1) or (2) of this section.

36 C.F.R. § 1.5(a) (2000).

Regulation 1.5(a) thus gives a park superintendent the flexibility, when the need arises, to restrict or impose certain conditions upon otherwise proper and allowable uses of a park. The regulation is concerned with the specific and sometimes transient needs of individual parks, and provides the means for tailoring the use of a given park to the particular circumstances of that park.[3]

---

[3]That regulation 1.5(a) is directed to park-specific decisions is evidenced by its reference to actions that may be taken by the "superintendent," a term defined in 36 C.F.R. § 1.4 (2000) as "the official in charge of a park area or an authorized representative thereof." The park-specific focus is also evidenced by the kinds of "public use limits" that a superintendent may impose, such as limitations on "the length of time *a designated geographic area or facility* may be occupied" or the number of people and the type and size of vehicles "allowed to enter, be brought into, remain in, or be used *within a designated geographic area or facility*." 36 C.F.R. § 1.4 (emphasis added).

The prohibition against carrying weapons in national parks, however, is a general rule applicable to all parks. While carrying a shotgun might under proper circumstances be perfectly legal according to Maryland law, it is not allowed in national parks, except under certain limited conditions not present in this case. Whether or not the general public may carry weapons in a given park is not a discretionary decision made by the park superintendent under regulation 1.5(a), but instead is a decision controlled by the statutes and regulations governing that park. And because the prohibition against weapons in Oxon Cove Park springs from the system-wide prohibition of regulation 2.4, and not from any park-specific decision made under the authority of regulation 1.5(a), the notice provisions of regulation 1.7 are therefore inapplicable.

The propriety of Lofton's conviction, then, is simply a question of whether there is sufficient evidence in the record to support the magistrate judge's factual determination that Lofton was in possession of a weapon on park lands. *See* Fed. R. Crim. P. 58(g)(2)(D) (In an appeal from a conviction by a magistrate judge, "[t]he defendant shall not be entitled to a trial de novo by a district judge. The scope of appeal shall be the same as an appeal from a judgment of a district court to a court of appeals."); *United States v. Peck*, 545 F.2d 962, 964 (5th Cir. 1977) ("Review by the district court of a conviction before the magistrate is not a trial de novo but is the same as review by a court of appeals of a decision by a district court . . . . In our review we apply to the magistrate the same standard used by the district court."). Because substantial evidence supports the magistrate judge's findings, Lofton's conviction must be affirmed. *See United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc).[4]

---

[4]That the district court and apparently the magistrate judge concluded that regulation 1.7 required that notice be given of the weapons ban does not prevent us from affirming Lofton's conviction. The interpretation of the regulations is a legal question reviewed *de novo*. *See United States v. Brown*, 200 F.3d 710, 713 (10th Cir. 1999). And we are not limited to the analysis of the magistrate judge or district court when affirming the conviction. *See United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995) ("[A]n appellate court can affirm a trial court's opinion on different grounds than those employed by the trial court . . . .); *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 361 n.3 (4th Cir. 1994) ("We have consistently recognized that, even though we disagree with the reasoning of the district court, we may affirm the result on different grounds if fully supported by the record.").

## III.

Lofton contends that since the district court affirmed his conviction only because it concluded that the C.F.R. posting satisfied the notice requirement, he should have been granted a new trial once he learned that no regulations had been posted at the park and that the park manager's trial testimony was incorrect.

A motion for a new trial based on newly discovered evidence should be granted only if (1) the evidence relied on is, "in fact, newly discovered"; (2) there are facts "alleged from which the court may infer due diligence on the part of the movant"; (3) "the evidence relied upon [is] not merely cumulative or impeaching"; (4) "the evidence [is] material to the issues involved"; and (5) the evidence is of such a nature that it would "probably result in [an] acquittal at a new trial." *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). If the motion for a new trial is based on a witness's recantation of trial testimony, the motion should be granted only if: (1) the court is reasonably satisfied that the testimony given by a material witness was false; (2) the jury might have reached a different conclusion without the false evidence; and (3) the party seeking the new trial was surprised by the false testimony and was unable to meet it or did not know of its falsity until after trial. *See United States v. Wallace*, 528 F.2d 863, 866 (4th Cir. 1976).

In this case, the park manager did not recant her trial testimony. Instead, Lofton merely presented evidence, obtained well after the trial, that contradicted the manager's trial testimony. While it may be that these facts would require application of the *Chavis* standard rather than the *Wallace* standard preferred by Lofton, we need not decide that question. Given our conclusion that notice of the weapons ban need not be given, the park manager's testimony about the posting of C.F.R. regulations, whether true or false, is simply immaterial to the question of whether Lofton unlawfully possessed a weapon at the park. Lofton's new trial motion thus was properly denied under either the *Chavis* or *Wallace* standard.

## IV.

For the forgoing reasons, Lofton's conviction and the denial of his motion for a new trial are hereby affirmed.

*AFFIRMED*