**Charles A. FARRAR, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 07SC983.

Supreme Court of Colorado, En Banc.

May 26, 2009.

Rehearing Denied June 15, 2009.

Mark G. Walta, Denver, Colorado, Attorney for Petitioner.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Farrar petitioned for review of the court of appeals' judgment partially affirming his multiple sexual assault and child abuse convictions and affirming the denial of his motion for new trial based on newly discovered evidence. While Farrar's direct appeal of his convictions was proceeding in the court of appeals, the child victim indicated that her testimony of sexual abuse by the defendant was fabricated. After a series of evidentiary hearings, the district court denied Farrar's motion for new trial, and he was permitted to join an appeal of that ruling with the appeal of his convictions. Although the court of appeals reversed portions of the judgment of conviction, it found no abuse of discretion in the district court's denial of his motion for a new trial.

We granted Farrar's petition solely on the question whether the court of appeals erred in affirming the denial of his motion for new trial. Because the district court was not reasonably convinced that the victim's testimony at trial was probably false, it did not abuse its discretion in denying his motion for new trial. The judgment of the court of appeals is therefore affirmed.

## I.

In February 2001 the defendant, Charles A. Farrar, was charged with committing multiple sexual-assault-related offenses against his stepdaughter. About a year earlier, when she was fifteen years old, she accused both her mother and her stepfather of continuous acts of sexual abuse, going back more than three years. Although a jury acquitted the defendant of child prostitution and sexual exploitation of a child, as well as several of the counts of sexual assault, it convicted him of numerous other sexual-assault-on-a-child-related offenses, and he was sentenced to 145 years to life imprisonment.

At trial the victim's testimony was the only direct evidence of the assaults, without physical or eyewitness corroboration. About a year after the defendant's conviction and sentence, while his direct appeal was pending in the court of appeals, the victim provided the defense with an affidavit recanting her allegations of sexual abuse and asserting that she had been threatened and told how to testify by the prosecutors and social workers. The court of appeals granted a limited remand for consideration of a defense motion for new trial based on newly discovered evidence.

Because the motion for new trial included allegations of failure to disclose the victim's pretrial attempts to recant, the district court disqualified the entire district attorney's office and appointed a special prosecutor to represent the People on remand. The district court held a number of evidentiary hearings in connection with the motion and enter-

tained oral and written arguments. In all, it heard from the victim, her maternal grandmother and her maternal uncle; as well as the prosecutors, social workers, guardian ad litem from the parallel dependency and neglect proceedings, and a man whom the victim dated for a number of months around the time of her recantation.

The victim testified that she fabricated the sexual assault allegations because she felt unloved by her parents and wanted to move to Oklahoma to live with her maternal grandparents. She specifically denied that the incidents of sexual abuse she described in her trial testimony ever occurred, and she also disavowed the testimony she gave at her dependency and neglect proceedings. She further denied being pressured to recant and claimed that even before the trial she tried to tell the prosecutors, her guardian ad litem, and the social workers that her accusations were false, but in each case she was ignored or actually threatened with being locked up in a mental institution if she were to change her account.

The victim's grandmother testified that she was personally rebuffed before trial when she tried to caution the prosecutors about the victim's lack of credibility, and she also insisted that she had actually overheard the victim recanting to one of the prosecutors. The victim's uncle disputed testimony of the guardian ad litem to the effect that he had told the guardian about the victim being pressured to withdraw her allegations of abuse by her mother.

The trial prosecutors and social workers in turn denied the victim's allegations of misconduct and testified that she never told them her accusations of sexual abuse were false. One of the trial prosecutors conceded that defense counsel notified her at one point that the victim was recanting her allegations, but she testified that when she telephoned the victim in Oklahoma for confirmation, the victim denied changing her story and acted angry and upset that the question was even being asked of her. The prosecutor also testified that although the victim did not want her mother to be offered a plea bargain, nevertheless, as the mother's trial date ap-

proached, the victim indicated that she simply could not go through another trial.

The victim's former guardian ad litem testified, contrary to the victim's testimony, that he saw the victim as many as a dozen times during the dependency and neglect proceedings but she never suggested to him in any way that her allegations were false. Although it was disputed by the victim's uncle, the guardian also testified that her maternal uncle had told him that the victim was being pressured to change her allegations of abuse by her mother and that the mother had offered to buy the victim a car.

A boyfriend of the victim testified that she told him she had actually been sexually abused by the defendant, but also that she was going to change her story in order to get her family back together. Although the boyfriend testified that the victim had shown him a journal in which she had written about the abuse, the victim explained that she often kept more than one diary and that this was a largely fictional piece on which she was working. In later testimony, she produced a previously unseen diary, which she claimed to have only recently located, containing entries dated contemporaneously with her outcry and indicating her deliberate fabrication of the assault allegations as part of a scheme to get away from her family and be sent to her grandparents in Oklahoma.

The district court took the matter under advisement and ultimately denied the motion in a lengthy, written order. It found the victim's allegations of prosecutorial misconduct unworthy of belief, and it therefore declined to order a new trial on those grounds. With regard to the recantation of her trial testimony and her new account of her stepfather's conduct, the district court found entitlement to a new trial in this case to turn entirely on the question whether the newly discovered evidence would probably bring about an acquittal at a new trial. Concluding that the victim had substantial credibility issues, with regard to both her testimony at trial and her testimony supporting the motion for new trial, the district court remained unpersuaded that any newly discovered evidence would produce an acquittal. It found instead that in all probability another jury,

like the first, would accept some of the victim's contentions and reject others.

Upon recertification to the court of appeals, the defendant's challenge to the denial of his motion for new trial was joined with his assignments of error at trial and sentencing. The court of appeals found errors involving two counts and remanded for resentencing and correction of the mittimus, but it affirmed the denial of the defendant's motion for new trial. It concluded that the district court applied the correct legal standard, heard and considered all of the evidence concerning the victim's credibility, and did not abuse its discretion in finding that the recantation would not probably have resulted in an acquittal at a new trial.

We granted the defendant's petition for a writ of certiorari solely with regard to his challenge to the denial of his motion for new trial based on newly discovered evidence.

## II.

■ Unlike assertions of prosecutorial subornation of perjury or failure to disclose exculpatory evidence, *see Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), or even assertions that defense counsel was ineffective, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), claims of newly discovered evidence do not draw into question the constitutionality of a criminal conviction. With the possible exception of an Eighth Amendment limitation on imposing the death penalty notwithstanding a sufficient allegation of actual innocence, *see Herrera v. Collins*, 506 U.S. 390, 401–02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (rejecting death row inmate's claim as insufficiently demonstrated even assuming the existence of such a constitutional limitation), the Supreme Court has never suggested that newly discovered evidence impeaching a guilty verdict implicates due process of law. Whether to grant new trials upon the discovery of new evidence undermining confidence in the reliability of criminal convictions is largely a matter of policy, requiring a balance between the need for finality and the state's interest in ensuring the fairness and accuracy of its proceedings. *People v. Schneider*, 25 P.3d 755, 762 (Colo.2001).

■ Although disfavored, new trials are allowed in virtually every jurisdiction in this country, according to each jurisdiction's own understanding of how and where to strike that balance. Because newly discovered evidence can arise in a multiplicity of circumstances, with widely differing significance, we have long emphasized the discretionary nature of the decision to grant or deny a new trial. *See, e.g., Blass v. People*, 79 Colo. 555, 558, 247 P. 177, 178 (1926). Depending upon such things as the nature of the additional evidence, the circumstances of its discovery, and the strength of the existing evidence supporting conviction, we have at times highlighted different considerations in making the determination and have articulated the applicable standards in a variety of terms.

■ More recently, however, we have attempted to identify and enumerate the considerations affecting motions for new trial based on newly discovered evidence generally. *See People v. Gutierrez*, 622 P.2d 547, 559–60 (Colo.1981); *Digiallonardo v. People*, 175 Colo. 560, 488 P.2d 1109 (1971). To begin, we have consistently made clear that evidence will be considered newly discovered for purposes of a motion for new trial only if it was both unknown to the defendant and his counsel in time to be meaningfully confronted at trial and unknowable through the exercise of due diligence. *Gutierrez*, 622 P.2d at 559–60; *People v. Scheidt*, 187 Colo. 20, 22, 528 P.2d 232, 233 (1974); *Digiallonardo*, 175 Colo. at 567, 488 P.2d at 1113. As the result of more modern development of the constitutional right to the effective assistance of counsel, however, a failure of counsel to competently investigate will not deprive a defendant of a right to a new trial as much as it will simply alter the terms of the analysis. *See Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

■ We have also required that the newly discovered evidence must not only be relevant to material issues at trial but that it must also be of consequence to the outcome. *See Scheidt*, 187 Colo. at 22, 528 P.2d at 233. Moreover, the newly discovered evidence

must be of sufficient consequence for reasons other than its ability to impeach, or cast doubt upon, the evidence already presented at trial. *Id.; Digiallonardo*, 175 Colo. at 567, 488 P.2d at 1113. It must be consequential in the sense of being affirmatively probative of the defendant's innocence, whether that is accomplished by helping to demonstrate that someone else probably committed the crime; that the defendant probably could not have committed the crime; or even that the crime was probably not committed at all. We have described the required materiality of newly discovered evidence, or the extent to which it must be consequential to the outcome, in various terms, with varying degrees of precision, but at least since *Digiallonardo*, we have specified that it must be such that it would probably produce an acquittal. 175 Colo. at 567, 488 P.2d at 1113.

■ Newly discovered evidence in this sense can, and often does, arise from the recantation of a witness who testified at trial. Perhaps because a recanting witness, in addition to typically offering a new version of pertinent events, necessarily impeaches his own prior testimony, some jurisdictions treat recantations as a distinct ground for ordering a new trial, subject to different standards of proof altogether. *See Larrison v. United States*, 24 F.2d 82 (7th Cir.1928) (new trial following recantation where the prior testimony is false and without it the jury might have reached a different conclusion); *e.g.*, *United States v. Willis*, 257 F.3d 636, 642–43 (6th Cir.2001) (following *Larrison* for a recantation case, but requiring that new evidence would likely produce an acquittal in other newly discovered evidence cases); *United States v. Lofton*, 233 F.3d 313, 318 (4th Cir.2000) (same). It has even been suggested that convictions shown to have been dependent in some measure on perjured testimony should be subject to reversal on a less stringent basis than would be permitted for other kinds of newly discovered evidence. 6 Wayne R. LaFave, Criminal Procedure § 24.11(d) (3d ed.2007); *cf. United States v. Williams*, 233 F.3d 592, 594 (D.C.Cir.2000) (criticizing *Larrison*, 24 F.2d 82, and other related cases as too lightly permitting a new trial). Unlike those jurisdictions, however, we have never singled out recantation for

this kind of special treatment and have, in fact, long held that a demonstration of false or mistaken testimony can entitle a defendant to a new trial only if the newly discovered evidence would also probably result in an acquittal. *Whipp v. People*, 78 Colo. 134, 141, 241 P. 534, 537 (1925) (new trial if verdict was probably influenced by false testimony *and* result of another trial would probably, or might, be different); *see also Cheatwood v. People*, 164 Colo. 334, 340, 435 P.2d 402, 405 (1967) (expanding *Whipp* to include mistaken testimony).

In *People v. Schneider*, we squarely addressed the concerns inherent in the recantation of an alleged incest or child sexual assault victim. While we made the new standard we created in that case applicable only to convictions resulting from guilty pleas, we discussed more broadly the problem of victim recantation, emphasizing the suspicion with which recantations should be examined and the court's role in making an objective assessment of the recanting witness's credibility. *Schneider*, 25 P.3d at 763. Significantly, we there spelled out the court's duty to assess a recanting witness's credibility, not only with regard to the unique second prong of the guilty plea standard, which mandates a determination whether the charges to which the defendant pled guilty were actually false or unfounded, but also with regard to the generally applicable requirement to determine whether the newly discovered evidence would probably result in acquittal at a new trial. *Id.* at 762.

■ By contrast with the second prong of the guilty plea standard, we were not required in *Schneider* to create a new obligation to assess the credibility of a recanting witness because that requirement was already inherent, if not always expressly articulated, in our existing standard for granting a new trial based on newly discovered evidence. In fact, we have for some time emphasized that a defendant can be entitled to a new trial as the result of newly discovered evidence only if that evidence would be likely to result in acquittal for reasons beyond simply impeaching the earlier conviction. Rath-

er than merely creating reasonable doubt by demonstrating that the recanting witness has given different and irreconcilable testimony on different occasions, *cf.* CRE 613(a) ("Examining witness concerning prior inconsistent statements for impeachment purposes"), recantation can justify a new trial only if it contains sufficiently significant new evidence, and if it, rather than the witness's inconsistent trial testimony, will probably be believed. *See United States v. McCullough,* 457 F.3d 1150, 1167 (10th Cir.2006).

In measuring the credibility of a recanting witness and determining whether that witness's new version would probably be believed, the trial court is not barred from relying on its own experience, but in addition to its own experience and observations of the witness, the court must consider all of the testimony and circumstances, and make findings that will permit appropriate appellate review. *Schneider,* 25 P.3d at 762. In *Schneider,* by describing the court's duty in terms of its being "reasonably satisfied," we intended to communicate the notion of an objective standard—whether a reasonable person with the appropriate degree of skepticism and awareness of the relevant circumstances, rather than a typical juror, would probably believe the witness's new version of events. *Cf. People v. Wadle,* 97 P.3d 932, 937 (Colo.2004) (distinguishing a typical juror from an objectively reasonable one). By referring to an assessment of the witness's credibility, we clearly did not intend that the inquiry be limited to simply the trial judge's subjective belief in the veracity of a recanting witness or suggest that a trial judge's personal belief could serve as a substitute for a reviewable finding of whether any new evidence produced by the recantation would probably result in an acquittal.

Because new evidence in the form of a witness recantation, whether believed or not, necessarily serves to impeach the recanting witness's credibility to some degree, it can justify a new trial only to the extent that it not only impeaches the prior testimony but does so by contradicting it with a different and more credible account. In addition to probably being believed by reasonable jurors, the witness's new version of events must be of such significance in its own right as to probably cause reasonable jurors to acquit the defendant. While not necessarily true of all recantations, the believability of a child sexual assault victim's recantation of the accusations upon which the charges are based would seemingly be determinative of the outcome in virtually every instance.

The crux of any motion for new trial premised on the post-trial recantation of a child victim's testimony of sexual assault must therefore be an objective assessment of the believability of her new account of relevant events. After considering all of the circumstances impinging on the recanting witness's credibility, including the existence of her prior inconsistent testimony, the court must determine whether it is more likely than not that reasonable jurors would believe her more recent testimony. Unless the victim's testimony that the defendant did not commit the sexual assault will probably be believed, it cannot be said that reasonable jurors would probably acquit as a result of that testimony.

### III.

The defendant asserts that the district court abused its discretion both by failing to properly acknowledge that reasonable doubt must be created by a sexual assault victim's recantation and, in addition, by forcing the defendant to demonstrate that any new trial would probably result in an acquittal on all charges. With regard to the former, the defendant misperceives the standard for granting a new trial in this jurisdiction, and with regard to the latter, he simply misreads the district court's ruling.

In its ruling, the district court initially dispensed with the defendant's allegations of prosecutorial failure to disclose and deliberate proffer of perjured testimony by finding the victim's allegations to be unworthy of belief. In ruling on these due process challenges, the court properly acted as the trier of fact, *see People v. District Court,* 790 P.2d 332, 338 (Colo.1990); *People v. Rodriguez,* 786 P.2d 1079, 1082 (Colo.1989), and there is no suggestion that its refusal to credit the victim's accusations of prosecutori-

al misconduct was clearly erroneous. With regard to the effect of newly discovered evidence, however, the district court objectively assessed, as it was obliged to do, the probable effect of the victim's post-trial testimony on reasonable jurors.

The district court considered evidence of the victim's lack of character for truthfulness and other testimony contradicting certain aspects of her post-trial testimony. It also compared the victim's demeanor in testifying both at trial and in post-conviction proceedings. Ultimately, it was unable to conclude that the victim's recantation testimony was any more believable than her trial testimony, and therefore it could not find that the victim's new evidence would probably result in the defendant's acquittal.

The defendant's assertion that the district court had an obligation to actually decide whether the recantation was believable misses the mark. In order to be entitled to a new trial for newly discovered evidence, the defendant bore the burden of demonstrating that new evidence offered by him would probably convince reasonable jurors to acquit him. In the case of recantation, this necessarily requires a demonstration that the jury would probably believe the victim's recantation. In the absence of such a showing, a trial court is required to deny a motion for new trial based on newly discovered evidence.

By the same token, the district court did not abuse its discretion by failing to appreciate, as the defendant contends, that in the absence of corroborating evidence of the assaults, any reasonable juror would have doubts about the accusations of a subsequently recanting witness. Quite the contrary, the district court properly evaluated the effect of the victim's recantation apart from its impeachment value. It has never been the policy of this jurisdiction to grant new trials on the basis of new evidence challenging the credibility of testimony presented at trial.

In the absence of error at trial, a new trial may be granted only upon the discovery of meaningfully contradictory evidence. Apart from obvious motives to recant, especially in the case of incest or child sexual assault victims, and apart from the danger of subjecting young witnesses to never-ending pressure to recant by too lightly allowing new trials, a jury's credibility determinations are entitled to respect. The fact that any inherent doubts about the trustworthiness of a self-impeaching witness must militate against, rather than in favor of, granting a new trial is embodied in our caution that recantations must be viewed with skepticism. *Schneider*, 25 P.3d at 763; *Digiallonardo*, 175 Colo. at 568, 488 P.2d at 1114.

Finally, the defendant asserts that by using the term "complete acquittal" in its concluding paragraph, the district court demonstrated that it denied the defendant a new trial only because he failed to prove that he would probably be acquitted of all pending charges. It is unnecessary for us to decide whether a new trial for newly discovered evidence might, under some set of circumstances, be appropriate despite failing to justify an acquittal on every charge of which the defendant was previously convicted. Here, the court's choice of language was equally consistent with an attempt to communicate that even the probability of a hung jury would be insufficient.

Whether or not a failure to make a timely objection could be considered a waiver, it is at least clear that the defendant's failure to seek timely clarification is responsible for any resultant ambiguity in this language. In addition to the fact that the crimes of which the defendant was convicted are not clearly differentiable, and the fact that the defendant has made no attempt to differentiate them for purposes of his motion, we believe the district court's ruling is fairly understood to intend only that a showing of probable acquittal is required.

### IV.

Because the district court heard and considered all available evidence bearing on the credibility of the recanting witness and was still not reasonably convinced that the victim's testimony at trial was probably false, it did not abuse its discretion in denying the defendant's motion for new trial. The judg-

ment of the court of appeals is therefore affirmed.

Justice BENDER dissents, and Chief Justice MULLARKEY and Justice MARTINEZ join in the dissent.

Justice BENDER dissents.

The majority holds that a recantation "can justify a new trial only to the extent that it not only impeaches the prior testimony but does so by contradicting it with a different and more credible account." Maj. op. at 708. Such a conclusion overstates our precedent. The appropriate standard that should be applied here is that newly discovered impeachment evidence is sufficient to justify a new trial when it, taken together with all of the other evidence for and against the defendant, is of such consequence that it probably would result in an acquittal on retrial. In this case, the parties agree that there was no evidence other than the victim's trial testimony to support the defendant's conviction. The trial court found that the victim's trial testimony had "substantial credibility issues." Given this set of circumstances, I conclude that the addition of the victim's recantation would bolster the defense argument for reasonable doubt and probably result in an acquittal on retrial. In my view, justice requires that the defendant receive a new trial. Hence, I respectfully dissent.

Post-trial recantation evidence should be viewed with skepticism. *Blass v. People*, 79 Colo. 555, 557–58, 247 P. 177, 178 (1926). For this reason, evidence serving "merely" to impeach or to cast doubt upon a witness's testimony is an inadequate ground for a new trial. *People v. Scheidt*, 187 Colo. 20, 22, 528 P.2d 232, 233 (1974); *Digiallonardo v. People*, 175 Colo. 560, 567, 488 P.2d 1109, 1113 (1971). The majority states that new impeachment evidence can justify a new trial only when it is of such significance that it would probably bring about an acquittal before a new jury. Maj. op. at 707 (citing *Whipp v. People*, 78 Colo. 134, 141, 241 P. 534, 537 (1925)). While I agree with this reading of our case law, I disagree with the majority's further statement that unless a witness's recantation is more believable than her trial testimony, it falls into a subset of

impeachment evidence that would not here, and perhaps could not ever, bring about an acquittal. Maj. op. at 708–09. This holding fails to account for cases in which the newly discovered impeachment evidence adds more support to an already viable defense case for reasonable doubt. In these cases, perhaps rare, the new evidence does much more than cast doubt upon a witness's credibility—it clearly could and probably would change the outcome of the case.

The facts of this case demonstrate how a witness recantation that is found no more believable than the initial trial testimony can nonetheless result in a probable acquittal. The parties agree that the jury's verdict came down to whether it believed the victim's trial testimony. Citing the jury's decision to convict the defendant on certain counts, but acquit him on others, the trial court concluded that some of the victim's trial testimony was "at least unpersuasive if not unbelievable," and that she had "substantial credibility issues." The victim's subsequent recantation provides an even greater basis to doubt the veracity of her initial testimony. Because virtually no evidence other than the victim's trial testimony supported the defendant's conviction, her full recantation of all the evidence implicating the defendant necessitates the conclusion that an acquittal—or finding by the jury of reasonable doubt as to the defendant's guilt—is at least probable.

While our cases state that "mere impeachment" cannot justify a new trial, I believe this statement expresses the idea that impeachment evidence may be insignificant or highly significant to the outcome of a case depending on the nature of the impeachment and the particular facts of the case. In those cases where the impeachment strikes at the heart of the conviction, there may exist a sufficient basis for a new trial. *See Miller v. People*, 92 Colo. 481, 489–90, 22 P.2d 626, 630 (1933) (endorsing the rule "that newly discovered impeaching evidence would not warrant a new trial, unless it clearly appears that it would probably change the result in case of a new trial") (internal quotations omitted). Such a reading is consistent with *People v. Gutierrez*, 622 P.2d 547 (Colo.1981), where we enumerated the modern standard for mo-

tions for new trials based on newly discovered evidence. There, we framed the relevant inquiry as, whether, "[b]ased on review of all the available evidence," the new evidence would probably produce an acquittal. *Id.* at 560. While the trial judge may apply her own experience in weighing the objective believability of the witness's recantation, she must do so by evaluating the probable impact of the recantation on the prosecution's case as a whole.

The majority relies upon *People v. Schneider*, 25 P.3d 755 (Colo.2001), for the proposition that a trial court must be "reasonably satisfied" that a reasonable person would probably believe the witness's new version of the events in order to grant a new trial. Maj. op. at 707–08. This reliance is misplaced. In *Schneider*, we examined the trial court's responsibility to evaluate a witness's credibility when a defendant requests to withdraw a guilty plea on the basis of a recantation. 25 P.3d at 761–62. A person who "voluntarily and knowingly enters a guilty plea accepting responsibility for the charges is properly held to a higher burden in demonstrating to the court that newly discovered evidence should allow him to withdraw that plea." *Id.* at 761. In addition to requiring that a defendant seeking to vacate a guilty plea demonstrate that the new evidence probably would result in an acquittal, we also required that the trial court determine that the charges filed against the defendant were "actually false and unfounded." *Id.* at 762. Accordingly, we required that a trial court be "reasonably satisfied" that the earlier accusations were untrue. *Id.*

In contrast to the guilty plea circumstances in *Schneider*, *Gutierrez* requires that the trial court need only find that the recantation, when considered with all the other evidence, will generate enough doubt to probably produce an acquittal. 622 P.2d at 560. In the circumstances of a conviction after a trial, the trial court need not be reasonably satisfied that the trial testimony is untrue, or even probably untrue. Even if the trial court had found the victim's recantation *less* credible than her trial testimony, it would not necessarily mean that an acquittal was not probable. *See State v. McCallum*, 208 Wis.2d 463, 561 N.W.2d 707, 711 (1997) ("It does not necessarily follow that a finding [that a recantation is] 'less credible' must lead to a conclusion of 'no reasonable probability of a different outcome.' Less credible is far from incredible.").

The majority's new test for recantations is also problematic because it overlooks the weight we are required to give to prior inconsistent statements as compared to other forms of impeachment. Although a witness's recantation has the effect of impeaching her prior testimony, the evidence here—a complete repudiation of her previous testimony implicating the defendant—constitutes a prior inconsistent statement which is admissible as substantive evidence. § 16–10–201, C.R.S. (2008) (prior inconsistent statements made at trial are admitted as substantive evidence); *see also People v. Tomey*, 969 P.2d 785, 787 (Colo.App.1998) (noting that a hearsay statement allegedly made by the victim to an inmate that was inconsistent with the victim's former testimony would be admitted on retrial as substantive evidence under section 16–10–201, C.R.S.). As the Tenth Circuit has explained, "when a witness recants his testimony, presumably he will testify to the new version at a new trial. Thus, the recantation is substantive evidence." *United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir.1984). Hence, I conclude that a recantation, depending on the circumstances and nature of the recantation and corroborating evidence, may constitute much more than "mere" impeachment.

In sum, I believe that the trial court abused its discretion in denying the defendant a new trial based on the victim's recantation. The trial court found that the jury's verdict came down to whether it believed the alleged victim's testimony. The trial court found that some of the victim's allegations generated reasonable doubt in the jury's mind. The victim's subsequent recantation provides an even greater basis to doubt the truthfulness of the initial allegations which the jury believed. The victim's suspect initial testimony, when coupled with the lack of corroborative evidence in this case, demonstrates that this key witness's recantation

would probably bring about an acquittal. Thus, justice requires a new trial.

Lastly, I note that what the trial court meant when it stated that the newly discovered evidence must produce a "complete acquittal" at a new trial is not relevant to the decision in this case. Nonetheless, the majority suggests in dicta that the defendant may have waived the right to challenge this order on the grounds that the trial court misconstrued the correct legal standard because the defendant did not seek timely clarification as to what the trial court meant by the term "complete acquittal." Maj. op. at 709. This statement appears without citation support, and my research disclosed no Colorado case requiring defense counsel to seek clarification of a trial court's denial of a motion for a new trial before challenging it on appeal.

For these reasons, I dissent.

I am authorized to state that Chief Justice MULLARKEY and Justice MARTINEZ join in this dissent.