19CA2370 Peo v Aguirre 01-20-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA2370 Larimer County District Court No. 13CR209 Honorable Susan Blanco, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Richard John Aguirre, Defendant-Appellant. ORDER AFFIRMED Division VI Opinion by JUDGE FREYRE Navarro and Harris, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 20, 2022 Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Amelia Power, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant 
1 ¶ 1 Defendant, Richard John Aguirre, challenges the postconviction court’s order denying his Crim. P. 35(c) motion without a hearing. He contends the postconviction court (1) erred by not conducting an evidentiary hearing on his newly discovered evidence claim; and (2) improperly evaluated his claim of cumulative error and should have granted him a hearing.
1 We disagree with his contentions and affirm the court’s order. I. Factual and Procedural Background ¶ 2 In 2013, a jury convicted Aguirre of first degree assault for stabbing Gilbert Gonzales. A division of this court affirmed his conviction in People v. Aguirre, (Colo. App. No. 14CA0588, Mar. 3, 1 Because Aguirre’s appeal challenges only two of his original eleven claims, we deem his remaining nine claims abandoned. People v. Ortega, 266 P.3d 424, 428 (Colo. App. 2011) (citing People v. Rodriguez, 914 P.2d 230, 249 (Colo. 1996)) (stating that a defendant’s failure to specifically reassert claims on appeal that the district court disposed of is a conscious relinquishment of those claims). Aguirre’s abandoned claims include allegations that trial counsel was ineffective (1) due to a conflict of interest; (2) for failing to object to the images of a knife being shown to the jury; (3) in the plea-bargaining stage; (4) for failure to investigate and put on a defense; (5) for failure to consult with a medical expert; (6) for failure to investigate and collaterally attack his habitual convictions; and (7) for introducing Aguirre’s in-custody status to the jury. He also abandoned his ineffective assistance of appellate counsel claim and his claim that the prosecutor used false evidence at trial. 
2 2016) (not published pursuant to C.A.R. 35(f)). The mandate issued on August 22, 2016. Aguirre filed a pro se Crim. P. 35(c) motion in October 2018 that was later supplemented by appointed counsel. The court denied the motion without a hearing on November 25, 2019, and this appeal followed. ¶ 3 As relevant here, Gonzales testified at trial that he and three other people were at a friend’s home, when two of them, Roger Sanchez and Aguirre, got into a verbal argument on the front porch. Gonzales said he went outside to stop the fight and to tell Aguirre to leave. Aguirre “got in his face,” and the two of them stepped off the porch. When Gonzales turned around to tell Sanchez to go back inside, he felt a punch to his side. He turned back toward Aguirre, who struck him with a bat and ran away. Gonzales went back inside and noticed that he had been stabbed. He recalled Aguirre handling a knife earlier in the day. ¶ 4 Gonzales went to the hospital and first told the doctors that he had accidentally injured himself installing a garage door. He testified that he lied to the doctors to avoid retaliation from his family for calling the police. Later, he spoke with investigating officers and told them about the altercation with Aguirre. 
3 ¶ 5 During cross-examination, defense counsel attacked Gonzales’s credibility through questioning about his prior felony convictions, his probation status, his alcohol use on the day of the stabbing, and inconsistencies between his testimony and his statements to police. ¶ 6 Sanchez also testified about the stabbing. He described being on the porch with Gonzales and Aguirre before the stabbing. He said that he and Aguirre were simply talking, and that Gonzales instigated the argument by being rude and disrespectful to Aguirre. He recalled Aguirre and Gonzales being near each other, then seeing Aguirre walk away and Gonzales walk into the house, holding his side and bleeding. When asked about detailed statements he had made to the police about the argument and the stabbing before trial — such as seeing Aguirre punch Gonzales in the side — Sanchez either denied making the statements or said that he was too drunk to remember making them. ¶ 7 Aguirre claimed in his supplemental postconviction motion that new evidence was discovered when Sanchez spoke to postconviction counsel’s investigator. Sanchez reported that when Gonzales returned from the hospital, he said another party — not 
4 Aguirre — had stabbed him. Sanchez also said that Gonzales told him that he planned to make money from his injury by filing a victim impact statement. Sanchez claimed that he and Gonzales had serious substance abuse issues that could have affected their testimony at the time of the trial. ¶ 8 In a thorough written order, the postconviction court denied Aguirre’s Crim. P. 35 (c) motion without a hearing. As relevant here, the court found that while Sanchez’s new statements were inconsistent with his trial testimony, the record showed that Sanchez gave inconsistent testimony at trial and that the new statement represented his third version of the events. It reasoned that even if this third version cast doubt on the credibility of other witnesses who testified at trial, Aguirre failed to show that a reasonable juror with the appropriate degree of awareness of all the circumstances would believe Sanchez’s third version more than the prior two versions; therefore, this evidence would probably not result in Aguirre’s acquittal. II. Newly Discovered Evidence ¶ 9 Aguirre contends that the postconviction court erroneously applied the holding in Farrar v. People, 208 P.3d 702, 706 (Colo. 
5 2009), to deny him an evidentiary hearing rather than first determining whether his allegations, if true, warranted a hearing. See White v. Denver Dist. Ct., 766 P.2d 632, 634-35 (Colo. 1988). We discern no abuse of discretion. A. Standard of Review and Applicable Law ¶ 10 We review de novo a postconviction court’s decision to deny a Crim. P. 35(c) motion without a hearing. People v. Cali, 2020 CO 20, ¶ 14. A court may deny a hearing only if the motion, files, and record in the case clearly establish that the defendant’s allegations are without merit and do not warrant postconviction relief. Ardolino v. People, 69 P.3d 73, 77 (Colo. 2003) (first citing People v. Hutton, 183 Colo. 388, 517 P.2d 392 (1973); and then citing White, 766 P.2d 632). ¶ 11 Newly discovered evidence entitles a defendant to a new trial only if the evidence would likely result in an acquittal for reasons beyond simply impeaching other evidence already presented at trial; it must contradict previous evidence “with a different and more credible account.” Farrar, 208 P.3d at 707-08. A witness’s recantation justifies a new trial “only if it contains sufficiently significant new evidence, and if it, rather than the witness’s 
6 inconsistent trial testimony, will probably be believed.” Id. at 708 (citing United States v. McCullough, 457 F.3d 1150, 1167 (10th Cir. 2006)). ¶ 12 To determine whether a witness’s new testimony would probably be believed, the court may rely on its own experience, but it must also consider all of the other testimony and circumstances of the case. Id. The standard is an objective one — “whether a reasonable person with the appropriate degree of skepticism and awareness of the relevant circumstances, rather than a typical juror, would probably believe the witness’s new version of events.” Id. (citing People v. Wadle, 97 P.3d 932, 937 (Colo. 2004)). ¶ 13 To succeed on a motion for new trial, a defendant must show that (1) the evidence was discovered after the trial; (2) the defendant and counsel exercised due diligence to discover all possible favorable evidence before and during the trial; (3) the newly discovered evidence is material to the issues involved and not merely cumulative or impeaching; and (4) a retrial with the newly discovered evidence would probably result in an acquittal. People v. Gutierrez, 622 P.2d 547, 559-60 (Colo. 1981) (citing People v. Scheidt, 187 Colo. 20, 22, 528 P.2d 232, 233 (1974)). 
7 B. Analysis ¶ 14 We conclude that even if Aguirre’s claim is true, it would not entitle him to an evidentiary hearing because the new evidence claim is meritless under a Farrar analysis. Ardolino, 69 P.3d at 77. Therefore, his reliance on White is misplaced. ¶ 15 We reach this conclusion for two reasons. First, Sanchez’s new testimony constitutes a “third version” of what occurred. If true, Sanchez’s recantation would be sufficiently significant new evidence because it identifies another as the perpetrator rather than Aguirre. However, it strains credulity to conclude that a jury would probably believe Sanchez’s third version of events any more than it believed his prior inconsistent trial testimony. This latest version does not identify the alleged new perpetrator or what the circumstances were leading to Gonzales’s injury. Nor does it identify any independent corroborating evidence produced at the trial that would lead a reasonable jury to probably acquit Aguirre on retrial. ¶ 16 Second, Aguirre has not shown that Sanchez’s new testimony does anything more than merely impeach Sanchez’s and Gonzales’s trial testimony. In our view, it falls short of satisfying the 
8 requirement that it be sufficiently substantial to probably result in an acquittal. ¶ 17 As the postconviction court noted, relief under Farrar requires a defendant to show that reasonable jurors — appropriately skeptical and aware of the circumstances and content of Sanchez’s previous statements — would more likely than not believe the more recent statement and disbelieve the prior trial testimony. 208 P.3d at 706-08. Aguirre failed to meet his burden under Farrar and therefore is not entitled to relief. And because Aguirre’s claim, even if true, would not entitle him to relief, he is not entitled to an evidentiary hearing under White. Accordingly, we discern no error here and affirm the court’s ruling. III. Cumulative Error ¶ 18 Aguirre also contends that the court erred in denying his cumulative error claim. He asserts that the court considered and dismissed his claims individually rather than considering them in the aggregate. As well, he asserts that the court could not properly rule on the claim without an evidentiary hearing. We disagree. 
9 A. Standard of Review and Applicable Law ¶ 19 Cumulative error is a question of law that we review de novo, and it applies where there are numerous formal irregularities, but none individually warrants reversal. Howard-Walker v. People, 2019 CO 69, ¶¶ 22, 24. Though an error, when viewed in isolation, may be harmless or not affect the defendant’s substantial rights, reversal will nevertheless be required when “the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.” Id. at ¶ 24 (quoting People v. Lucero, 200 Colo. 335, 344, 615 P.2d 660, 666 (1980)). To warrant reversal of a conviction on direct appeal based on cumulative error, numerous errors must have been committed, not merely alleged. People v. Thomas, 2014 COA 64, ¶ 61. B. Analysis ¶ 20 Even assuming the cumulative error doctrine applies to ineffective assistance of counsel claims, because we discern no error in the court’s newly discovered evidence ruling, we necessarily discern no cumulative error; the cumulative effect of nothing is still nothing. And to the extent Aguirre asserts that the court erred in 
10 denying a hearing on the cumulative error claim, we cannot consider that issue because he did not appeal the court’s rulings on the nine other claims. IV. Conclusion ¶ 21 The order is affirmed. JUDGE NAVARRO and JUDGE HARRIS concur.