**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 22 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

SANTOS IGLESIAS HERNANDEZ,

      Defendant - Appellee.

No. 02-2072

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-01-1305 MV)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellant.

Charles A. Harwood, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender, Shari Lynn Allison, Research and Writing Specialist, with him on the brief), Las Cruces, New Mexico for the Defendant-Appellee.

---

Before **O'BRIEN**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ANDERSON**, Senior Circuit Judge.

---

**McWILLIAMS**, Senior Circuit Judge.

---

In a two-count indictment one Santos Iglesias Hernandez ("Defendant") was charged with knowingly and in reckless disregard of the fact that Efren Cruz-Segoviano ("Cruz"), an alien, had come to, entered and remained in the United States in violation of the law, did transport and move, and attempt to transport and move said alien within the United States by means of transportation and otherwise, in furtherance of such violation, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii); 8 U.S.C. § 1324(a)(1)(B)(i) and 8 U.S.C. § 1324(a)(1)(A)(v)(II). In the second count the defendant was similarly charged in connection with one Juan Antonio Saavedra-Segoviano, also an alien. A jury convicted the defendant on both counts. After the verdicts were received, counsel for the defendant orally moved for judgment of acquittal under Fed. R. Crim. P. 29. Later, counsel filed a written motion for a new trial. On February 25, 2002, the district court by memorandum opinion and order granted defendant's motion for judgment of acquittal pursuant to Rule 29 and entered a judgment of acquittal, with the provisio that "[i]f the Judgment of Acquittal is vacated or reversed on appeal, Defendant's Motion for New Trial . . . is hereby conditionally granted in part." The district court's Memorandum Opinion and Order appears as *United States v. Hernandez,* 189 F.Supp. 2d 1272 (D.N.M. 2002). The government appeals that order. We reverse.

As indicated, we are here concerned with an alleged violation of 8 U.S.C. § 1324(a). That statute provides as follows:

§ 1324.  Bringing in and harboring certain aliens

> (a) Criminal penalties
> (1)(A) Any person who–
> . . . .
> (ii) knowing or in reckless disregard of the fact that an
alien has come to, entered, or remains in the United States in violation of law, <u>transports, or moves</u> or attempts to transport or move <u>such alien within the United States by means of transportation</u> or otherwise, <u>in furtherance of such violation of law;</u>
>   . . . .
> (v)(I) engages in any conspiracy to commit any
> of the preceding acts, or
> (II) aids or abets the commission of any of the
> preceding acts, shall be punished as provided in
> subparagraph (B).  (Emphasis added.)

In granting defendant's oral post-trial motion for judgment of acquittal, the district court held that, although all of the other elements of 8 U.S.C. § 1324(a) had been met, "the government did not sufficiently prove 'that the defendant acted willfully in furtherance of the alien's violation of the law'." *Id.* at 1276.  In conditionally granting defendant's written motion for a new trial, the district court held that certain "remarks" made by government's counsel to the jury in closing argument "influenced the jury to render a guilty verdict," *Id.* at 1279,  and, alternatively, that the "guilty verdict goes against the weight of the evidence . . . , thus requiring a new trial in the interest of justice." *Id.* at 1282.

At trial, the government called five witnesses and the defendant, himself, was the only witness called for the defense.  On rebuttal, the government recalled two of its prior witnesses.  Cruz, who was the alien that the defendant was charged in Count 1 with

transporting "in furtherance of such violation" in violation of 8 U.S.C. § 1324, testified through an interpreter that he was a Mexican citizen who had entered the United States illegally. Concerning his illegal entry, Cruz stated that he was accompanied on that occasion by his cousin, Juan Antonio Saavedra-Segoviano, the cousin forming the basis for Count 2 of the indictment against the defendant. Cruz testified that he and his cousin went to Juarez, Mexico, where a "guide" led them across the Rio Grande River into El Paso, Texas. The guide took them to a hotel in El Paso, where the two remained for several days. Several nights later a different person (not the guide) took Cruz and his cousin to a tractor-trailer rig owned by a party who was later identified by other witnesses as the defendant. This person directed Cruz and his cousin to get into the sleeper compartment, which was located directly behind the cab of the truck, and was designed to accommodate two persons. It was separated from the cab by a curtain. According to Cruz, the truck then left that area and made two stops along the highway en route to Albuquerque, New Mexico. At the second stop "the people got in who were going to go with us." They were also placed in the sleeper compartment and the journey continued until the truck reached the Border Patrol checkpoint on Interstate 25, north of Las Cruces, New Mexico. According to Cruz, as they were approaching the checkpoint, the driver said "[w]e're reaching the checkpoint" and closed the curtain which separated the cab from the sleeping compartment.

Other government witnesses testified that the defendant was the driver of the

vehicle here mentioned and that the defendant, with his wife in the passenger seat, drove his vehicle into the primary inspection area at the Border Patrol checkpoint around one a.m. on the morning of June 30, 2001. The agent on duty asked the defendant his citizenship, and the defendant said he was not an American citizen, but was a Cuban refugee lawfully in the United States. According to the agent, the defendant would not make "eye contact" and "appeared to look everywhere else but at [the agent] during questioning." During this questioning, the agent noticed a "bulge" at the floor level behind the curtain which separated the sleeping compartment from the cab area of the truck. After the defendant produced his documentation, the agent asked the defendant to open the curtain, and the defendant made only "a half-hearted attempt to open the curtain." The agent then saw a human leg at the lower end of the curtain, whereupon, he directed the defendant to proceed to a secondary inspection area of the check point. The defendant drove the truck to the second inspection area, and, as other agents approached the truck, two men jumped out of the truck and over a guardrail and a barbed wire fence. They were ultimately apprehended by the agents. Another agent inspected the sleeping area of the truck and found 16 persons "packed in there like sardines," including Cruz and his cousin.

The defendant, who also testified with the aid of an interpreter, stated that he was a Cuban, and that he, and others, had escaped Cuba in 1994 after fleeing Cuba on a home-made raft. He testified that on June 30, 2001, he was employed by a trucking company as

a driver. Per instructions from his employer, he had been sent to Houston, Texas, to pick up a load for his employer, but when he was 20 or 30 miles from Houston, he was told by the company dispatcher not to go to Houston and was instructed to go to San Antonio, Texas. At a truck stop in San Antonio, he learned that there was a load available in Albuquerque, New Mexico. Then, after making a delivery in El Paso, Texas, he proceeded to go to Albuquerque, via Las Cruces, New Mexico.

The defendant further testified that, when he was a short distance north of Las Cruces, he saw a parked van that appeared to be having mechanical problems and that next to the van there was a man standing with a red tank in his hand. Defendant said he also saw two women and three children. Defendant then stopped his truck and engaged the man in conversation. The man said the van had broken down and asked if the defendant would give his family a ride to Albuquerque. Defendant testified he agreed to do so, thinking it would be just the two women and three children. To his surprise, he testified that many more people got out of the van and he decided to give all of them transportation to Albuquerque. They were all put in the sleeping compartment behind the truck's cab. As the truck approached the checkpoint north of Las Cruces, the defendant noted that someone, but not he, had closed the curtain behind the cab and in front of the sleeping compartment. The defendant added that, at that moment, for the first time, he "began to think negatively about these people."

As indicated, both Cruz and his cousin were lead across the border on foot and

taken to a hotel in El Paso, Texas.  They remained in that hotel for several days, having food delivered to their hotel room.  A couple of days after crossing the border, Cruz and his cousin were taken by a different party and placed in a truck going to Albuquerque, New Mexico, when they were "discovered," along with others, at a security checkpoint north of Las Cruces, New Mexico.  The government's "theory of the case" was that once an illegal alien has crossed the border, he, or she, has an understandable desire to get as far away from the border as quickly as possible and that its evidence adduced at trial supports its "theory of the case."  We agree, and the district court erred in concluding that the defendant was not transporting Cruz and his cousin, as well as the others, "in furtherance" of their violation of 8 U.S.C. § 1324.

We deem *United States v. Barajas-Chavez,* 162 F.3d 1285 (10th Cir. 1999) to be dispositive of the question of whether the evidence in the instant case was sufficient to support a conviction of this defendant under 8 U.S.C. § 1324(a)(1)(A)(ii) and that the district court thus erred in granting counsel's oral motion for a judgment of acquittal. *Barajas* involved a prosecution under 8 U.S.C. § 1324(a)(1)(A)(ii).  A jury convicted the defendant in that case with the crime charged, and the district court thereafter granted the defendant's motion for judgment of acquittal, the district court believing that the facts of that case did not support a conviction under 8 U.S.C. § 1324(a)(1)(A)(ii).  Specifically, the district court concluded that the facts and circumstances of that case did not show that the transportation afforded by the defendant was "in furtherance of such violation of the

law" required by 8 U.S.C. § 1324(a)(1)(A)(ii). On appeal, a panel of this Court affirmed the district court. *See United States v. Barajas-Chavez,* 134 F.3d 1444 (10th Cir. 1998). However, that matter was reheard by this court, sitting en banc. *Barajas,* 162 F.3d at 1285. On en banc rehearing, we unanimously reversed and remanded with directions to the district court to reinstate the jury's verdict.

In reinstating the jury's verdict in *Barajas,* we spoke as follows:

> In light of these definitions, we conclude the "in furtherance of" language is unambiguous. The statute requires that a defendant know or act in reckless disregard of the fact that an individual is an illegal alien, and that defendant's transportation or movement of the alien will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States.
> . . . .
> Under such an approach, a factfinder may consider any and all relevant evidence bearing on the "in furtherance of" element (time, place, distance, reason for trip, overall impact of trip, defendant's role in organizing and/or carrying out the trip). Naturally, the relevant evidence will vary from case to case.

*Id.* at 1288-89.

We conclude that the facts and circumstances of the instant case, as have been set forth above, come well within the teaching of *Barajas* and that the district court erred in granting the defendant's oral motion for judgment of acquittal.

There remains the question of whether the district court also erred in granting a new trial if it should be later determined, as we now have, that the motion for judgment of acquittal was improvidently granted. The district court granted defendant's written

motion for new trial on two grounds: (1) the jury's verdict was against the weight of the evidence, and (2) improper comment by the prosecutor in his closing argument. By our order that the district court reinstate the jury's verdict, it necessarily follows that the verdict is not against the weight of the evidence.

The other ground for granting a new trial, i.e., improper closing argument by government counsel, needs only brief comment. After counsel had concluded their closing argument to the jury, and the jury had retired to commence its deliberation, the district court summoned counsel and one of the government's witnesses to the bench. The district court reprimanded the witness for indicating his disapproval, through his gestures ("rolling his eyes"), of certain remarks made by defense counsel in his closing argument to the jury. The district court also mildly admonished government counsel for a statement he had made to the jury in his closing argument, the district court being of the view that the particular comment was not supported by the record. However, the district court indicated that neither was serious enough to require further action by the court. In his written post-trial motion for a new trial, defense counsel urged as grounds therefor, the allegedly improper comment of the government counsel in closing argument which had been brought to his attention by the district court. The district court, as indicated, later concluded that the allegedly improper comment was a sufficient ground for ordering a new trial. Counsel agrees that he made no contemporaneous objection to the comments in question, and that such being the case, he must now show "plain error" that "affects

substantial rights."  If that is shown, then under Fed. R. Crim. P. 52(b), a circuit court has the "discretion" to notice the plain error if such "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United  States v. Olano*, 507 U.S. 725, 732 (1993).  Counsel has not met this rather stringent test, and under these circumstances the district court erred in "conditionally granting a new trial."

The judgment of the district court is REVERSED and the case REMANDED to the district court with instructions to reinstate the verdict of the jury, and deny defendant's motion for new trial.