**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Kenneth Maurice McNEELY, III, Defendant–Appellant.**

**No. 06CA2519.**

Colorado Court of Appeals, Div. VII.

May 28, 2009.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Dvorchak Law Office, P.C., Kim Dvorchak, Littleton, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Kenneth Maurice McNeely, III, was convicted after a jury trial of one count of sexual assault on a child, and the court sentenced him to four years to life in prison. We affirm the conviction but remand to correct a clerical error in the mittimus.

## I. Background

This case arose from an alleged sexual relationship between the twenty-year-old defendant and a thirteen-year-old neighbor girl. The jury acquitted on two counts involving earlier incidents but convicted on a third count involving the last incident, which allegedly occurred in February 2005. The victim testified she and defendant had oral and coital sex that month in defendant's house.

## II. Discussion

### A. Sufficiency of Evidence

Defendant argues the evidence was legally insufficient to convict him of the February 2005 assault. We review the record in the light most favorable to the prosecution to determine whether any rational juror could find defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *People v. Lehnert,* 163 P.3d 1111, 1115 (Colo. 2007); *People v. Dunlap,* 124 P.3d 780, 819 (Colo.App.2004).

The trial evidence easily passes this deferential standard of review. The victim's testimony, if credited by the jury, sufficed to prove defendant guilty of sexual assault on a child. *See* § 18–3–405(1), C.R.S.2008 ("Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.").

■ Defendant argues the victim was not a credible witness. But with rare exceptions, "the credibility of witnesses is solely within the province of the jury." *People v. Gonzales*, 666 P.2d 123, 128 (Colo.1983); *see also Kansas v. Ventris*, —— U.S. ——, ——, 129 S.Ct. 1841, 1847 n. *, 173 L.Ed.2d 801, —— (2009) ("[o]ur legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses"). Testimony may be ruled incredible as a matter of law in those rare cases, such as where "a witness describes events she could not possibly have seen or that are not possible under the laws of nature." *People v. Leonard*, 167 P.3d 178, 182 (Colo.App. 2007) (internal quotations omitted). That high standard is not met here. While there was no direct corroboration of the actual sexual conduct, text messages and third-party testimony corroborated other aspects of the victim's description of her overall relationship with defendant. It was for the jury to evaluate credibility in light of all the evidence, and we cannot second-guess its verdict.

■ Defendant argues "this was an all or nothing case of witness credibility" and there was "no plausible theory upon which a rational trier of fact could find [him] guilty of the last incident only." This argument, which asks us to invalidate the conviction on the third count as purportedly inconsistent with the acquittals on the first two counts, fails as a matter of law. It is now settled that a conviction on one substantive count may not be set aside simply because it is factually inconsistent with the jury's acquittal on a related substantive count. *See People v. Saldana*, 899 P.2d 208, 211–12 (Colo.1995); *People v. Frye*, 898 P.2d 559, 570 (Colo.1995).

### B. The Prosecutor's Rebuttal Closing Argument

■ Defendant challenges the propriety of statements made by the prosecution in closing argument. Trial courts have discretion to decide whether a closing argument is improper and, if so, how best to remedy it. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1049 (Colo.2005).

■ Defendant principally challenges arguments emphasizing one witness's religious status: the prosecutor first argued the witness was "an admitted youth pastor, a man of God" (the court sustained an objection and instructed the jury to disregard this); then referred to the witness's "occupation" (the court again sustained an objection); and finally said the jury could look at the credibility instruction and recall the witness's occupation as "a youth pastor at his church." This predictably spawned another objection, with defense counsel arguing the witness's occupation was not a proper consideration and requesting the court to re-read to the jury the general instruction on witness credibility. The court responded by reminding the jury of its prior instruction on witness credibility.

The prosecutor's references to the witness's occupation as "a youth pastor" and "man of God" were improper. While this occupation was relevant background information, because it explained the context in which the witness had met the victim and eventually heard her claim of a sexual relationship with defendant, it had no legitimate bearing on the witness's credibility. *See* CRE 610 ("Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purposes of showing that by reason of their nature his credibility is impaired or enhanced."); *People v. Mandez*, 997 P.2d 1254, 1268 (Colo.App.1999) (holding it "plainly violate[d] CRE 610" where witness testified he understood importance of telling truth now that "Jesus Christ saved [his] life").

■ Reversal is not warranted because the trial court sustained objections to the improper arguments. While the court did not expressly sustain the third objection, defendant's specific request at that point was

for it to re-read the general credibility instruction to the jury. (The court referred jurors back to the instruction but did not re-read it.) Further, this witness had no first-hand knowledge of the alleged crimes, and the case did not turn on his credibility. The prosecutor's arguments were improper, but we decline to reverse on that ground. *Cf. Crider v. People,* 186 P.3d 39, 42 (Colo.2008) ("we have expressly rejected any per se rule requiring reversal as a sanction or deterrent" for improper argument).

■ Defendant also challenges the prosecutor's argument that the victim's cutting herself was a "cry for help." The trial court did not abuse its discretion by overruling this objection, because this was an inference the prosecutor reasonably could ask the jury to draw from evidence in the record.

### C. The Supplemental Jury Instruction

Defendant challenges a supplemental instruction—a modified *Allen* charge, *see Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Allen v. People,* 660 P.2d 896, 898 (Colo.1983)—given by the trial court after jurors indicated they were dead-locked. The instruction contained four numbered paragraphs tracking those quoted in Colorado's *Allen* case. It told the jurors to continue to deliberate, "keeping the following suggestions in mind":

1. Jurors have a duty to consult with one another and to deliberate with a view to reaching a verdict if it can be done without violence to individual judgment;

2. Each juror must decide the case for him or herself, but only after impartial consideration with his or her fellow jurors;

3. In the course of deliberation, a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is erroneous;

4. No juror should surrender his or her honest conviction as to the weight and effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.

Defendant argues the instruction was coercive not because of what it said but because of what it failed to say expressly: that a mistrial would be declared if jurors could not reach unanimity. We hold this argument was not timely raised in the trial court and that the omission now challenged by defendant was not plain error.

#### 1. Failure to Preserve the Challenge

■ Defendant first challenged the instruction in a new trial motion, which the trial court rejected on the merits; he argues this sufficed to preserve the challenge. Defendant contends that Colorado courts have not expressly decided this issue and points out that some cases limiting review to plain error note "the defendant failed to preserve [a challenge] by contemporaneous objection at trial *or in his motion for a new trial.*" *Ramirez v. People,* 682 P.2d 1181, 1183 (Colo. 1984) (emphasis added); *see also People v. Mason,* 643 P.2d 745, 751 (Colo.1982) (similar). Those cases were decided when a new trial motion was a prerequisite to raising an issue on appeal, which no longer is true under Crim. P. 33(a).

■ We hold a challenge is unpreserved and thereby forfeited (subject only to plain error review) unless it is made in time for the trial court to avoid the alleged error. The rule on instructions provides that parties "shall make all objections [to proposed instructions] *before they are given to the jury* " and "[o]nly the grounds so specified shall be considered on motion for a new trial or on review." Crim. P. 30 (emphasis added). More generally, the rule abolishing formal exceptions deems it "sufficient that a party, *at the time the court ruling or order is made or sought,* makes known to the court the action which he desires the court to take or his objection to the court's action and the grounds therefor." Crim. P. 51 (emphasis added).

Colorado case law requires not only that objections be sufficiently "specific" but also that they be "timely." *Thomas v. People,* 820 P.2d 656, 659 (Colo.1991); *People v. Jimenez,* 217 P.3d 841, 867 (Colo.App. 2008). It does not suffice to give trial courts a post-hoc

opportunity to consider an alleged error. Rather, a primary goal of the rules is *"to prevent error from occurring"* in the first place. *People v. Stewart,* 55 P.3d 107, 120 (Colo.2002) (emphasis added). As the Supreme Court has explained, "[o]rderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

Applying the plain error standard of review to instructional objections first raised in a new trial motion is consistent with federal practice. *See, e.g., United States v. Brandao,* 539 F.3d 44, 57 (1st Cir.2008); *United States v. Breque,* 964 F.2d 381, 387 & n. 7 (5th Cir.1992); *cf. United States v. Hernandez,* 327 F.3d 1110, 1114 (10th Cir.2003) (same regarding objection to closing argument first raised in new trial motion); *United States v. Tiller,* 302 F.3d 98, 105 (3d Cir.2002) (same). As the Tenth Circuit wrote, objecting for the first time in a new trial motion "does not make up for" lack of "a contemporaneous objection at trial." *United States v. Hill,* 60 F.3d 672, 675 (10th Cir. 1995).

Defendant's instructional challenge was not preserved because it was not raised at trial. We hold that raising it for the first time in a new trial motion was too late to avoid the plain error standard.

### 2. Plain Error Review of the Challenge

■ We thus review defendant's unpreserved challenge to the supplemental instruction under the plain error standard. *People v. Miller,* 113 P.3d 743, 750–52 (Colo.2005). To satisfy this standard, defendant must show the instructional error was an "obvious" and "substantial" one that "so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Vigil,* 127 P.3d 916, 930 (Colo.2006) (citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

■ While an *Allen*-type instruction is designed to "avoid[ ]" the "societal costs of retrial," *Lowenfield v. Phelps,* 484 U.S. 231, 238, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), those societal savings cannot come at the expense of coercing individual jurors to surrender their honest convictions. *Cf. Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (new trial required where judge instructed jurors, "You have got to reach a decision in this case"). The charge here covered each of the four numbered points in the instruction quoted in *Allen,* 660 P.2d at 898, and approved by Colorado cases as non-coercive. *See, e.g., People v. Grace,* 55 P.3d 165, 170 (Colo.App. 2001); *People v. Watson,* 53 P.3d 707, 713 (Colo.App.2001).

Defendant relies on Colorado appellate cases suggesting these four numbered points may not suffice. In addition, these cases have written, an instruction must "also" in some way "inform the jurors that they will be excused and a mistrial declared if they cannot reach a unanimous verdict." *Grace,* 55 P.3d at 170; *see also People v. Raglin,* 21 P.3d 419, 423 (Colo.App.2000) ("In addition, the instruction must inform the jurors that if it appears to the trial court that a unanimous decision cannot be reached, they will be excused and a mistrial will be declared.").

The genesis of requiring specific reference to the possibility of a mistrial is unclear. Paradoxically, the fatal flaw with the instruction actually given in the Colorado *Allen* case was that it *did* expressly inform jurors a mistrial would be declared if they could not reach unanimity after another hour of deliberations. *See* 660 P.2d at 898–99 (invalidating such a "time-fuse" instruction).

We will assume that upon request courts expressly should instruct jurors a mistrial will be declared in the event of continued deadlock. Nonetheless, omitting an express reference to a possible mistrial did not cause this otherwise proper instruction to become so plainly improper and unduly coercive as to violate fundamental fairness. *Cf. United States v. Vachon,* 869 F.2d 653, 659 (1st Cir.1989) (Breyer, J.) (no error in otherwise non-coercive *Allen* charge that "did not specifically say 'a jury has the right to dis-

agree' "). The instruction suggested at least implicitly that jurors could be discharged without reaching a verdict, by stating jurors should continue to "deliberate with a view to reaching an agreement *if it can be done without violence to individual judgment*" but "[n]o juror should surrender his [or her] honest conviction . . . *for the mere purpose of returning a verdict.*" (Emphases added.)

Defendant argues the omission caused confusion in light of an original instruction that jurors "must acquit" if they "cannot agree upon [the] specific incidents" of sexual assault. This original instruction was erroneous because lack of unanimity should result in no verdict, not acquittal. *Cf. People v. Richardson,* 184 P.3d 755, 761–62 (Colo.2008) (jury deadlocked on greater offense may not be instructed to return verdict on lesser offense); *People v. Melillo,* 25 P.3d 769, 779 n. 10 (Colo.2001) (instruction required jurors to "unanimously agree" on specific incidents of sexual assault to convict but did not suggest jurors must acquit absent unanimity).

The court's responses to jury questions correctly clarified that unanimity was required to return *either* a guilty or a not guilty verdict. *See United States v. Arpan,* 887 F.2d 873, 875–77 (8th Cir.1989) (en banc) (trial court properly responded to divided jury's question by stating it "may not return a verdict" absent unanimity; defendant was not entitled to "explicit" instruction that "jury had a right . . . to reach no decision, that is, to be a 'hung jury' "). We decline to reverse simply because a prior instruction wrongly suggested, in a way that unjustly could have benefited defendant, that the jury should acquit absent unanimity.

### D. The Newly Discovered Evidence Motion

■ Defendant challenges denial of his new trial motion based on newly discovered evidence. Appellate review is deferential, as trial courts have broad discretion in deciding new trial motions. *Farrar v. People,* 208 P.3d 702 (Colo. 2009).

The new trial motion contained an affidavit from defendant's mother (who had testified as a defense witness at trial) offered to refute part of the victim's testimony. The victim testified that the last incident of sexual relations with defendant occurred sometime in February 2005, while defendant's parents were out of town. The mother's post-trial affidavit stated she now had determined from reviewing financial documents that the only weekend trip she and her husband had taken was in late April 2005.

The court denied this part of the motion without a hearing. It found a lack of "reasonable diligence," as the information was "in the exclusive possession of the defendant's mother" and thus "readily available" to defendant. The court also found this evidence was "in the nature of impeachment evidence, which would be offered to discredit or impeach the testimony of the victim as to when the acts she described may or may not have occurred."

■ We conclude the district court did not abuse its discretion in denying the motion without a hearing. Such motions require a defendant to show: "[1] that the evidence was discovered after the trial; [2] that defendant and his counsel exercised diligence to discover all possible evidence favorable to the defendant prior to and during the trial; [3] that the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and [4] that on retrial the newly discovered evidence would probably produce an acquittal." *People v. Gutierrez,* 622 P.2d 547, 559–60 (Colo. 1981), *quoted in People v. Schneider,* 25 P.3d 755, 761 (Colo.2001).

A new trial motion may be denied for failing to satisfy any one of these elements. *See Digiallonardo v. People,* 175 Colo. 560, 567–68, 488 P.2d 1109, 1113 (1971) (because such motions "are looked on with great disfavor," "[t]hese prerequisites must be strictly established by the defendant"). Defendant argues he at least should have been granted an evidentiary hearing, as he was not required to "prove all four elements" in the motion itself. He also argues the trial court erred in making "findings" on the motion without holding such a hearing.

■ A trial court's broad discretion in ruling on new trial motions necessarily subsumes discretion to decide whether to hold

an evidentiary hearing. Colorado cases recognize such discretion in evaluating the need for hearings in analogous contexts. *See, e.g., People v. Dunlap,* 36 P.3d 778, 783 (Colo. 2001) (motion to reduce sentence); *People v. Mollaun,* 194 P.3d 411, 416 (Colo.App.2008) (motion alleging irregularity in jury proceedings); *People v. Eckert,* 919 P.2d 962, 967–68 (Colo.App.1996) (motion for new trial on grounds other than newly discovered evidence). And it is "settled [federal] law" that trial courts have discretion to decide new trial motions "on the basis of affidavits without an evidentiary hearing." *United States v. Sensi,* 879 F.2d 888, 900 & n. 12 (D.C.Cir. 1989) (citing cases). Indeed, "evidentiary hearings on new trial motions in criminal cases are the exception rather than the rule." *United States v. Connolly,* 504 F.3d 206, 220 (1st Cir.2007).

 We conclude the trial court's denial of an evidentiary hearing was not an abuse of discretion. While a defendant need not prove his ultimate entitlement to a new trial in order to obtain an evidentiary hearing, he at least must "ma[k]e a threshold showing sufficient to warrant such a hearing." *Id.* at 219.

There was no abuse of discretion in finding the motion and affidavit facially insufficient to show the information could not previously have been discovered with reasonable diligence. While the mother's affidavit stated she "was not able to review all [her] financial documents" during trial, the trial court found without contradiction that defendant had known well before trial that the victim was alleging the last sexual incident occurred during a February 2005 weekend when the mother was out of town. The defense offered no explanation as to whether these records had been requested before trial and, if so, why the mother could not then have located them. The trial court was not required to hold a hearing to explore facts within the defense's own knowledge.

In addition, as the court suggested, the information was merely impeaching and facially insufficient to satisfy the high standards for overturning a conviction. The mother's new information might show the victim was mistaken as to either the date of the last incident or the fact that defendant's parents were out of town at the time. But it would not prove the sexual incident testified to by the victim, and found by the jury to have occurred, did not in fact occur.

### E. Correction of the Mittimus

Defendant finally requests a remand to correct the mittimus, which reflects he was convicted of a class three sexual offense. That classification would be correct had defendant been found guilty of committing the offense as part of a pattern of sexual abuse, *see* § 18–3–405(2)(d), C.R.S.2008, but the jury acquitted defendant on the pattern specification. Accordingly, as the People concede, the mittimus should be corrected to reflect defendant was convicted of class four felony sexual assault on a child.

### III. Conclusion

The judgment is affirmed but the case is remanded for the limited purpose of correcting the mittimus.

Judge RUSSEL and Judge J. JONES concur.