The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Terrence Curtis GIBBONS,
Defendant–Appellant.

No. 09CA1184.

Colorado Court of Appeals,
Div. VII.

Sept. 15, 2011.

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, James S. Hardy, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FURMAN.

Defendant, Terrence Curtis Gibbons, appeals his convictions of theft by receiving and second degree perjury. We affirm.

A park ranger patrolling Lake Pueblo State Park came upon a trailer without a license plate and a jet ski—a twelve-foot Bombardier Sea-doo—with an improper Colorado registration number. She asked who owned the vehicles, and defendant approached her. The ranger asked defendant why the trailer did not have a license plate; defendant stated he had spoken with someone employed by the Department of Motor Vehicles (DMV), who allegedly had advised him that he did not need a license for the trailer because he had purchased the trailer and jet ski together.

The ranger told defendant it was unlikely that he had previously had such a conversation with anyone employed by the DMV. The ranger then asked defendant for identification and proof of ownership; defendant offered only his driver's license and two pink temporary registration permits pertaining only to the jet ski. Defendant had signed the following perjury statement on both permits: "I (we) hereby swear or affirm under penalty of perjury that I am (we are) the lawful owner(s) of the vessel/vehicle described above, and that the information given herein is true and correct to the best of my (our) knowledge and belief."

As the ranger returned to her vehicle, defendant followed. He said that he had bought the jet ski and trailer from Craigslist on layaway one year earlier, had just finished paying them off, and was using the jet ski for the first time. Defendant also told the ranger that he realized one of the registration numbers on the jet ski was wrong but that he had affixed an "S" rather than a "5" because he did not have a "5" in his possession at the time.

The ranger called the state patrol office regarding the trailer's registration number; the office advised her that the trailer had been stolen. The ranger also discovered that the first permit defendant gave her was dated over one year earlier; that one permit described the jet ski as a sixteen-foot "Seadoo Challenger," while the other permit described the jet ski as a sixteen-foot "Malibu Bombardier Challenger"; and that, on both permits, the box labeled "open boat" had been checked. The ranger then arrested defendant. As she continued investigating, she learned that the jet ski had also been stolen.

Defendant was charged with theft by receiving and second degree perjury. He was convicted by a jury of both counts and was sentenced to five years in prison and three years mandatory parole.

On appeal, defendant contends

(1) the trial court gave an incomplete modified-*Allen* instruction to the jury when the jury indicated it was deadlocked;

(2) the trial court committed plain error in giving the jury an improper "time-fuse" instruction;

(3) the trial court committed plain error in conducting an impermissible ex parte conference with the jury;

(4) the evidence was not sufficient to convict him of either theft by receiving or second degree perjury; and

(5) the trial court abused its discretion in allowing comments by the prosecutor during closing argument and rebuttal closing.

We address each contention in turn.

## I. Modified–*Allen* Instruction

We first consider whether the trial court gave an incomplete modified-*Allen* instruction to the jury when the jury indicated it was deadlocked. We conclude it did not.

■ Upon receiving information that a jury cannot agree on a verdict, a trial court may not give an instruction with a potentially coercive effect but may, if it considers it appropriate, give a modified-*Allen* instruction. *People v. Raglin*, 21 P.3d 419, 423 (Colo.App.2000); *see Allen v. People*, 660 P.2d 896, 898 (Colo.1983). A modified-*Allen* instruction should inform the jurors that

(1) they should attempt to reach a unanimous verdict; (2) each juror should decide the case for himself or herself after impartial consideration with the others; (3) they should not hesitate to re-examine their views and change their opinions if convinced they are incorrect; and (4) they should not surrender their honest convictions solely because of the opinions of other jurors or for the purpose of returning a verdict.

*People v. Grace*, 55 P.3d 165, 170 (Colo.App.2001)(citing *Allen*, 660 P.2d at 898; CJI–Crim. 38:14 (1983)).

■ The trial court has the discretion to decide whether to give a modified-*Allen* instruction, and we will not disturb its ruling unless it abuses that discretion. *See People v. Schwartz*, 678 P.2d 1000, 1012 (Colo.1984).

■ It is undisputed that defendant did not object to the giving of the instruction. Where the defendant does not object at trial to instructional errors he alleges on appeal, we review for plain error, which must both (1) be obvious and substantial, and (2) so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Kaufman v. People*, 202 P.3d 542, 549 (Colo.2009); *see* Crim. P. 52(b). The defendant has the burden of persuasion with respect to prejudice. *People v. Boykins*, 140 P.3d 87, 95 (Colo.App. 2005).

The jury heard the prosecution's evidence against defendant on a Friday, and the defense rested without presenting any evidence. The jury began deliberating that day after closing arguments, and it recessed for the weekend without rendering a verdict. On Monday morning, after resuming deliberations, the jury sent the following question to the trial court: "What is the finding if all jurors do not reach a unanimous decision?" After speaking with counsel, and without objection from defendant, the court called the jury into the courtroom and the following dialogue occurred:

THE COURT: [Juror No. 7], I received a note from the jurors asking, "What is the finding if the jurors do not reach a unanimous verdict?" Let me ask you whether or not you or all of you feel there is a likelihood of progress towards a unanimous verdict if I allow you to continue. I'm not interested in how you're deciding, just whether or not it is appropriate for me to have you continue to deliberate.

JUROR NO. 7: At this time, no. We're at a standstill.

THE COURT: I'm going to read you an additional instruction. I'm going to give you another opportunity to go back in the

jury room. Then I'll talk with you again in about an hour.

You are instructed, since it appears to the Court your deliberations have been somewhat lengthy, the Court wishes to suggest a few thoughts you should consider in your deliberations along with the evidence in the case and all the instructions previously given.

It is your duty as jurors to consult with one another and deliberate with a view to reaching a verdict if you can do so without violence to individual judgment. Each of you must decide the case for yourself. Do so only after impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. Do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. You are not partisans. You are judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

With that, ladies and gentlemen, I'm going to give you another opportunity to go back in the jury room. As I indicated, I'll see if you're able to make progress in a few minutes. Thank you.

(Jury exited courtroom.)

THE COURT: I would ask, [defense counsel] and [prosecutor], if you can hang out and I'll just bring the jurors back probably as soon as I finish my docket.

[DEFENSE COUNSEL]: That's fine.

THE COURT: You can have [defendant] stand by.

THE DEPUTY: We can have him stand by or bring him back.

THE COURT: Whatever you would prefer. I know [another judge] is going to come back.

(Recess was taken at 12:00 p.m.)

THE COURT: The jurors are indicating they're progressing a little bit, and they want us to check with them in five minutes.

[PROSECUTOR]: Really? I have resigned myself to—okay.

THE COURT: If counsel are available, the Court would be in recess for a few minutes.

(Recess was taken at 12:10 p.m.)

THE COURT: The Court's going to recall 08CR 1157. This is People v. Terrence Gibbons. [Defendant] is present with [defense counsel]. [The prosecutor] appears on behalf of the People. You've been advised that the jury has reached a verdict?

THE CLERK: I have.

THE COURT: Anything that either attorney has or wants the Court to address before I bring the jurors in?

[DEFENSE COUNSEL]: No, Judge.

[PROSECUTOR]: No, Your Honor.

(Jurors entered courtroom.)

THE COURT: The record should reflect that the jurors have returned to the courtroom. [Juror No. 7], you are the foreperson; is that correct?

JUROR NO. 7: Yes.

THE COURT: Has the jury reached a verdict?

JUROR NO. 7: Yes.

The court's instruction tracked the pattern instruction for deadlocked juries, *see* CJI–Crim. 38:14, the language of which has been "approved by Colorado cases as non-coercive." *People v. McNeely*, 222 P.3d 370, 375 (Colo.App.2009).

Defendant nevertheless contends, as did the defendant in *McNeely*, that the trial court committed plain error in not instructing the jury, in response to the jury's question regarding its inability to reach a verdict, that a mistrial would be declared in the event of a deadlock. We disagree.

Defendant relies on *Raglin* for the proposition that, if a jury is deadlocked, the trial court "must inform the jurors that if it appears to the ... court that a unanimous decision cannot be reached, they will be excused and a mistrial will be declared." *Raglin*, 21 P.3d at 423. Citing *Schwartz*, *Raglin* first enunciated this "mistrial advisement" requirement. *See id.* One division of this

court reiterated the *Raglin*-type mistrial advisement, *see Grace*, 55 P.3d at 170; another division noted that *Raglin* seemed inconsistent with *Allen*, yet it assumed that, "upon request," the jury should be given a *Raglin*-type mistrial advisement, *see McNeely*, 222 P.3d at 375.

We disagree with the *Raglin* division's reading of *Schwartz*. In *Schwartz*, the supreme court addressed two separate matters: first, the six factors a trial court must consider in deciding whether to declare a mistrial, *Schwartz*, 678 P.2d at 1011–12; and second, how a court should proceed in the event of jury deadlock, *id.* at 1012. With regard to the second matter, the supreme court stated:

> On September 22, 1971, the Chief Justice of the Colorado Supreme Court issued a directive forbidding the use of the *Allen* charge and prescribing a new instruction. The directive states:

> "IT IS HEREBY ORDERED that the 'Allen' Instruction, otherwise known as the Third Degree Instruction, be no longer given to juries in trials conducted in this state. If it appears that a jury has been unable to agree, the trial court may *in its discretion* require the jury to continue its deliberations and may give an instruction which informs the jury that:

> "1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment;

> "2) Each juror must decide the case for himself, but only after an impartial consideration with his fellow jurors;

> "3) In the course of deliberation, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

> "4) No juror should surrender his honest conviction as to the weight and effect of the [evidence] solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

> "A jury shall be discharged by the trial judge without having agreed upon a verdict *if it appears to the trial judge that* there is *no reasonable probability of agreement.*"

(Emphasis added.) Apparently, this is the "modified *Allen* charge" that the defendant requested. We note that the directive states that the giving of this instruction is within the trial court's discretion. Moreover, the instruction may be given only in narrowly prescribed circumstances. The trial court must first determine whether there is a likelihood of progress towards a unanimous verdict upon further deliberations. The court must then exercise its discretion in deciding whether the instruction should be given.

*Id.* (citation omitted). In our view, the four numbered paragraphs are the four components of a modified-*Allen* instruction that a trial court in its discretion may give; and the concluding paragraph informs the court when it may discharge the jury. We think *Schwartz* neither states nor implies that a trial court must add to a modified-*Allen* charge by advising a deadlocked jury that a mistrial is inevitable if no verdict is returned. Further, a *Raglin*-type mistrial advisement does not appear in the pattern instruction for deadlocked juries. *See* CJI–Crim. 38:14.

Moreover, an advisement similar to the *Raglin*-type mistrial advisement—that if the jury remained deadlocked, the court would have to declare a mistrial—was expressly disapproved in *Allen v. People*, which sanctioned the modified-*Allen* instruction. *See Allen*, 660 P.2d at 898 ("The instruction may have a coercive effect, like that of the *Allen* charge, because it orders the jury to end its deliberations with a verdict or have a mistrial declared."). The supreme court, in rejecting the trial court's instruction in *Allen*, apparently linked the "time-fuse" element of the instruction to the "threatening of a mistrial" element. *See id.* at 899 n. 2 ("We disapprove the practice of threatening a mistrial if a verdict is not returned by a specific time."); *see also McNeely*, 222 P.3d at 375.

Accordingly, we are persuaded that we must take the analysis one step further. Even if a clearly impermissible "time-fuse" component is absent when the trial court gives a deadlocked jury a modified-*Allen* instruction, we do not agree that a *Raglin*-type

mistrial advisement should be given, for three reasons.

First, a *Raglin*-type mistrial advisement is inherently coercive. In effect, it tells a deadlocked jury, "If you all cannot agree on a verdict, the court will declare a mistrial, and we will have to start over with a new jury." This may encourage members of the jury originally in the minority to acquit or convict not on the basis of the evidence before them, but rather on the basis of their response to what they perceive to be the desire of the trial court to avoid a mistrial. *See State v. Randall*, 137 Mont. 534, 353 P.2d 1054, 1058 (1960) ("The inevitable effect of [a coercive] instruction would be to suggest to the minority members of the jury that they ought to surrender their own convictions and follow the majority. A vibrant, pulsating, intelligent minority is a part of our American way of life."); *see also Schwartz*, 678 P.2d at 1012 ("There is a compelling concern that the jury not be coerced into rendering a verdict. A court cannot sanction a verdict 'which is reached by some members of the jury sacrificing their conscientious opinions merely for the sake of reaching an agreement.'" (citations omitted) (quoting *Lowe v. People*, 175 Colo. 491, 494, 488 P.2d 559, 561 (1971))).

Second, a *Raglin*-type mistrial advisement introduces to the jury information about the procedure of trial courts that is extraneous to its verdict-rendering process. *See Allen*, 660 P.2d at 898 ("A jury shall be discharged by the trial judge without having agreed upon a verdict *if it appears to the trial judge* that there is no reasonable probability of agreement." (emphasis added)); *see also Schwartz*, 678 P.2d at 1012.

Third, a *Raglin*-type mistrial advisement is legally incorrect because it implies that the jury is required to render a verdict, one way or the other. The members of the jury, however, are not required to unanimously decide anything, but rather are free to remain deadlocked. *See Huffman v. United States*, 297 F.2d 754, 758 (5th Cir. 1962)(Brown, J., concurring in part and dissenting in part) ("[The trial judge] was laboring under a basic misapprehension: that a criminal trial must end with (1) a verdict of guilty or (2) a verdict of not guilty. What he

overlooked was that failure to agree at this trial is, at least momentarily, a victory for the defense and a legitimate end of the trial.").

Because a trial court, in the event of jury deadlock, should not instruct the jurors that they will be excused and a mistrial declared if they cannot reach a unanimous verdict, we conclude the trial court did not err in not giving the jurors a *Raglin*-type mistrial advisement. *See Allen*, 660 P.2d at 898–99.

## II. "Time–Fuse" Instruction

We next consider whether the trial court committed plain error in giving the jury an improper "time-fuse" instruction. We conclude it did not.

 A "time-fuse" instruction "grants the jury a time limit to finish its deliberations, at the end of which the jury will be dismissed." *Allen*, 660 P.2d at 898 n. 1. In *Allen*, the supreme court concluded that the trial court's instruction to the jury giving it an "arbitrary fifteen minute deadline" to deliver a verdict constituted plain error and required the reversal of the defendant's conviction. *Id.* at 898. The court, however, declined to enact a per se ban on instructions giving the jury a time limit for returning a verdict. *Id.* at 899. Instead, the court "believe[d] that the better approach utilizes a case-by-case examination of the particular facts of each case where the instruction is given." *Id.*

 In defendant's trial, the trial court did not give the jury a timeline for its deliberations. Before the court read the pattern instruction on juror deadlock, it said, "I'm going to give you another opportunity to go back in the jury room. Then I'll talk with you again in about an hour." After the court finished reading the instruction to the jury, it said, "With that, ladies and gentlemen, I'm going to give you another opportunity to go back in the jury room. As I indicated, I'll see if you're able to make progress in a few minutes." The court recessed at 12:00 p.m. Shortly after the jury returned to the jury room, the court said on the record, "The jurors are indicating they're progressing a little bit, and they want us to check with them in five minutes." The court again re-

cessed at 12:10 p.m. Soon after that, the court clerk advised the court and the parties that the jury had reached a verdict. The court's minute order reflects that the jury's verdict was entered at 12:30 p.m.

We conclude the trial court did not commit plain error in its statements to the jury. When we consider the court's statements as a whole, we are persuaded they did not constitute an impermissible "time-fuse" instruction. The court's statements were non-coercive, and they neither set a timeline for a verdict nor told the jury that a mistrial would be declared if it did not deliver a verdict— the fatal flaws in the trial court's statements in *Allen. See id.* at 897–98; *see also McNeely,* 222 P.3d at 375.

## III. Ex Parte Conference

We next consider whether the trial court committed plain error in conducting an impermissible ex parte conference with the jury. We conclude it did not.

■ A defendant has a fundamental right to have counsel present when the trial court gives instructions to the jury or responds to questions from the jury. *Leonardo v. People,* 728 P.2d 1252, 1257 (Colo.1986). In addition, a defendant has the right to have counsel present for communications between the court and the jury "even where the discussions are purportedly confined to 'scheduling' matters, because the content of such *ex parte* communications and the context in which they occur may create more than a 'minimal risk' that counsel's absence would impair the defendant's right to a fair trial." *Key v. People,* 865 P.2d 822, 825 (Colo.1994).

■ We conclude the trial court did not commit plain error, for two reasons. First, defendant did not object at any time during the period between the reading of the modified-*Allen* instruction and the point at which the foreperson notified the court and the parties that the jury had reached a verdict. The lack of objection, while not dispositive, is nevertheless indicative of a lack of error by the court. *See People v. Pineda,* 40 P.3d 60, 68 (Colo.App.2001) (harmless error where defense counsel did not object to any

unrecorded portions of the trial and could not articulate prejudice).

Second, we disagree that the trial court itself ever engaged in any ex parte communications with the jury. The record reveals that the court said, "I'll see if [the jurors are] able to make progress in a few minutes," and "the jurors are indicating they're progressing a little bit"; the court's next statement on the record about the jury's progress occurred when it confirmed with its clerk that the jury had reached a verdict. In the absence of defendant's trial attorney making a record, we have no basis to conclude that the court willfully violated the prohibition against ex parte communications with the jury. *See State v. Ramirez,* 178 Ariz. 116, 871 P.2d 237, 249 (1994)("[T]he trial court is presumed to know and follow the law.").

■ Although defendant contends the trial court committed cumulative error in its alleged instructional defects and ex parte conference, the doctrine of cumulative error "requires that numerous errors be committed, not merely alleged," and a conviction will not be reversed unless the cumulative effect of any errors substantially prejudiced the defendant's right to a fair trial. *People v. Whitman,* 205 P.3d 371, 387 (Colo.App.2007). Because we have rejected all of defendant's assignments of error surrounding the modified-*Allen* instruction, we need not address his assignment of cumulative error.

## IV. Sufficiency of the Evidence

We next consider whether the evidence was sufficient to convict defendant of either theft by receiving or second degree perjury. We conclude the evidence was sufficient to convict defendant of both charges.

■ In reviewing defendant's sufficiency argument, we are guided by the following principles. When a defendant challenges on appeal the sufficiency of the evidence, we must determine "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt." *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999).

The prosecution must be given the benefit of every reasonable inference that can fairly be drawn from the evidence. *People v. McIntier,* 134 P.3d 467, 471 (Colo.App. 2005). But a conviction cannot rest merely on inferences derived from other inferences. *People v. Ayala,* 770 P.2d 1265, 1268 (Colo.1989)(citing *Tate v. People,* 125 Colo. 527, 541, 247 P.2d 665, 672 (1952)).

### A. Theft by Receiving

Section 18-4-410(1), C.R.S.2011, describes the crime of theft by receiving as follows:

[A] person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value.

 Where a defendant is charged with theft by receiving, his or her state of mind as to whether the goods were stolen may be inferred from either his conduct or the circumstances of the case. *People v. Tumbarello,* 623 P.2d 46, 49 (Colo.1981). Guilty knowledge relevant to theft by receiving may be established by circumstantial evidence, as indeed it often is. *Whaley v. People,* 171 Colo. 287, 292, 466 P.2d 927, 930 (1970). Where the record contains evidence of circumstances showing knowledge of the theft, other than a defendant's unexplained possession of recently stolen goods, the record may give rise to a reasonable inference of guilty knowledge. *People v. Albright,* 722 P.2d 430, 431 (Colo.App.1986).

 Moreover, the prosecution can establish intent to deprive the lawful owner permanently if it "proves a knowing use by the defendant inconsistent with the owner's permanent use and benefit." *People v. Pedrie,* 727 P.2d 859, 862 (Colo.1986); *see Hucal v. People,* 176 Colo. 529, 534–35, 493 P.2d 23, 26 (1971)("If the rule were that there had to be a permanent deprivation of property before a conviction could be sustained, every time stolen property was recovered and returned to its true owner the thief would have to be acquitted. Such a rule would be inane.").

By way of the ranger's testimony and relevant exhibits, the jury was presented with the following evidence, some of which reflected false or implausible statements by defendant, indicative of a guilty state of mind:

- defendant stated, implausibly, to the ranger that someone with the DMV had told him he did not need a license for the trailer, yet the ranger testified, based on her familiarity with state law, that a license is required for a trailer and that the county clerk and recorder, not the DMV, charges for such a license;

- when the ranger asked for identification and proof of ownership, defendant provided only his driver's license and the two temporary registration permits for the jet ski;

- the registration number visible on the jet ski was "CLS306F," which did not match the number listed on either permit and did not match the actual registration number, "CL5306FX";

- the registration number on the 2008 permit appeared to substitute the letter "S" for the number "5," whereas the number on the 2007 permit did not; and

- defendant said he had just gotten the vehicles out of layaway and was, for the first time, putting the jet ski in the water, contrary to the fact that the first permit evidenced use or possession of the jet ski more than a year earlier.

 When we view the evidence in the light most favorable to the prosecution, we conclude the evidence was sufficient to convict defendant of theft by receiving. *See Sprouse,* 983 P.2d at 777. Based on the incongruities between defendant's statements to the ranger and (1) the ranger's testimony as to how trailer licenses were granted, (2) the incorrect registration number on the jet ski, (3) the fact that both permits were inaccurate, and (4) the fact that both permits were inconsistent with each other; and based on defendant's false or contradictory statement about when he first acquired and used the jet ski, the evidence supports the reasonable inference of defendant's guilty knowl-

edge or belief that the jet ski and trailer had been stolen. *See McIntier*, 134 P.3d at 471; *Albright*, 722 P.2d at 431.

In addition, because defendant possessed the trailer and jet ski at the time the officer discovered they were stolen property, the evidence supports the independent reasonable inference that defendant knowingly used the trailer and jet ski in a manner inconsistent with the owner's permanent use and benefit and, thus, that he intended to deprive the lawful owner of their use and benefit permanently. *See Pedrie*, 727 P.2d 859, 862; *cf. People v. Maciel*, 39 Colo.App. 149, 151, 568 P.2d 68, 70 (1977)(second, independent inference may be drawn from evidence without reliance upon first inference).

■ Finally, contrary to defendant's contention, the prosecution was not required to prove he actually stole the vehicles. *See People v. Zuniga*, 80 P.3d 965, 970 (Colo.App. 2003)(theft and theft by receiving are distinct crimes).

Defendant's reliance on *Ayala*, for the proposition that the knowledge or belief necessary to establish his culpability for theft by receiving may be drawn only from facts established, and not from an inference upon an inference, is misplaced. The jury was not asked either whether the evidence supported an inference that the vehicles were worth more than the price defendant purportedly paid for them, or whether that inference supported a further inference that the purchase price caused defendant to know or believe the vehicles were stolen. *See Ayala*, 770 P.2d at 1268. The evidence, rather, supported the reasonable and independent inferences that (1) defendant fabricated his story about the vehicles and (2) by his fabrication, he intended to prevent detection of the fact that the vehicles had been stolen. *See Maciel*, 39 Colo.App. at 151, 568 P.2d at 70.

## B. Second Degree Perjury

Section 18–8–503(1), C.R.S.2011, describes the crime of second degree perjury as follows:

A person commits perjury in the second degree if, other than in an official proceeding, with an intent to mislead a public servant in the performance of his duty, he makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law.

The evidence showed that defendant signed the perjury statement on both permits. Moreover, the ranger testified that, while both permits described the jet ski as being an "open boat," jet skis in actuality are always marked as "personal watercraft"; that the permits had inconsistent descriptions of the jet ski; that neither permit correctly described the jet ski; and that a jet ski is never sixteen feet long.

■ When we view the evidence in the light most favorable to the prosecution, we conclude the evidence was sufficient to convict defendant of second degree perjury. *See Sprouse*, 983 P.2d at 777. The evidence supports the reasonable inference that defendant made a materially false statement which he did not believe to be true, under an oath required or authorized by law, based on both the obvious inconsistencies between the jet ski's attributes and its description on the permits and the inconsistencies between the permits themselves. *See McIntier*, 134 P.3d at 471. That evidence also supports the reasonable inference that defendant, by his representations on the permits, intended to mislead the ranger in the performance of her duty. *See id.*

## V. Prosecutor's Comments

We finally consider whether the trial court abused its discretion in allowing certain challenged comments by the prosecutor during closing argument and rebuttal closing. We conclude it did not.

We must evaluate a claim of improper closing argument "in the context of the argument as a whole and in light of the evidence presented at trial." *People v. Whittiker*, 181 P.3d 264, 275 (Colo.App.2006). A prosecutor has wide latitude to make arguments based on facts in evidence and reasonable inferences that may be drawn from those facts. *People v. McBride*, 228 P.3d 216, 221 (Colo. App.2009).

The trial court has discretion to determine whether a prosecutor's statements constitute

inappropriate argument. *People v. Foster*, 971 P.2d 1082, 1085 (Colo.App.1998). Thus, we will not disturb its decision on such matters absent a showing of an abuse of that discretion that resulted in prejudice and a denial of justice. *People v. Suazo*, 87 P.3d 124, 128 (Colo.App.2003).

### A. Comments with Timely Objection

During closing argument, the following dialogue occurred:

[PROSECUTOR]: It is not possible for me to climb inside [defendant's] head and determine what he knew or what he believed on July 24 of 2008. So we have to look at the other evidence that was admitted in an attempt to determine what he knew or what he believed on July 24 of 2008.

[DEFENSE COUNSEL]: Judge, I object[,] that shifts the burden.

THE COURT: This is argument. I'll overrule the objection, but, [prosecutor] . . .

[PROSECUTOR]: What evidence did we have that [defendant] knew or believed the trailer and jet ski were stolen? First of all, there is no license on the trailer. There has not been any attempt to license the trailer.

[DEFENSE COUNSEL]: That's not in evidence, objection. That is simply—

THE COURT: Overruled.

During rebuttal closing, the following dialogue occurred:

[PROSECUTOR]: [Defendant] provides both of these registration forms as his only documentation or proof of ownership. One of them is dated July 3 of 2007 and is modified to purport to describe a Bombardier. Over a year before he appears at Lake Pueblo. He provides this document to [the ranger] after telling her that he's just gotten it out of a lay away plan and this is the first time he's had it in the water and then gives her documentation that substantiates it had been in the water over a year ago.

[Defendant] has no documentation, no bills of lading, no receipts, no canceled checks, no registration forms.

[DEFENSE COUNSEL]: Judge, I'm sorry, this shifts the burden.

THE COURT: I'm going to overrule that.

[PROSECUTOR]: In [defendant's] meeting when [the ranger] asks him for whatever documentation for proof of ownership, he simply comes up with nothing other than those registration forms.

 We conclude the trial court did not abuse its discretion in overruling defendant's objections on either set of the prosecutor's comments. The prosecutor's first comments constituted proper argument on the reasonable inferences that could be drawn from the circumstantial evidence concerning defendant's state of mind. *See McBride*, 228 P.3d at 221; *see also Tumbarello*, 623 P.2d at 49. Defendant contends the prosecutor's second comments shifted the burden of proof and disparaged defendant for not producing at trial documentation that proved he owned the trailer and jet ski. She was, however, merely commenting on the evidence. There was no suggestion that defendant had any burden to disprove an element of the prosecution's case. *See People v. Santana*, 255 P.3d 1126, 1130 (Colo.2011)(concluding prosecutor's arguments were meant to highlight strength of prosecution's case and did not shift burden of proof).

### B. Comments Without Timely Objection

Defendant did not object at trial to the following three comments that the prosecutor made during either closing argument or rebuttal closing, all of which related to defendant's credibility:

It is not credible that a 27–year–old male does not know that a trailer requires a license. [Defendant] tells [the ranger] that the [DMV] has informed him that he does not need a license if the trailer and jet ski were purchased together. It is not credible that anyone at the [DMV] gave him that information.

. . . .

I submit that it is not credible that a 27–year–old male in the State of Colorado would not know that he needed ownership documentation and proof of ownership of

these two items with him and in his possession.

. . . .

[Defendant] tells [the ranger] that he was told by [the] DMV that he did not have to license the trailer and, in fact, it was not licensed. He's a 27–year–old male. That is not credible.

The defendant's failure to object is a factor to be considered in examining the impact of a prosecutor's argument. *People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990). A lack of objection " 'may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.' " *Id.* (quoting *Brooks v. Kemp,* 762 F.2d 1383, 1397 n. 19 (11th Cir.1985) (en banc), *vacated,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *and reinstated,* 809 F.2d 700 (11th Cir.1987)).

 We conclude the prosecutor's juxtaposition of defendant's age against the circumstances of his arrest was proper argument on a reasonable inference as to his credibility that could be drawn from the fact that the trailer was not licensed. *See McBride,* 228 P.3d at 221.

Defendant nevertheless contends the prosecutor's comments "cumulatively and discretely" constituted reversible error in that the defense theory of the case instruction (as modified by the trial court) did not remedy any alleged prejudice. He contends the instruction was faulty because it did not state that as a matter of law, the jury could not find him guilty merely because he ought to have known the trailer and jet ski were stolen. We disagree.

The final version of the defense theory of the case instruction read:

> [Defendant] contends that he did not have the knowledge or belief required for him to be found guilty of theft by receiving, nor did he have the knowledge or belief required for him to be found guilty of perjury in the second degree. Whether [defendant] should have known the jet ski and trailer were stolen is not at issue in this case and you are instructed that you may not find him guilty based upon a belief that he ought to have known.

The trial court's first instruction to the jury stated that the court had the duty to "decide what rules of law apply to this case" and that the jury "must follow all the rules as [the court] explain[s] them to [the jury]." When we read the defense theory of the case instruction in tandem with the court's first instruction, we are persuaded that the jury was not given cause to apply a "reasonable person" standard to the mens rea element of theft by receiving. *See People v. Harlan,* 8 P.3d 448, 473 (Colo.2000) ("Absent evidence to the contrary, we presume that a jury follows the trial court's instructions."), *overruled on other grounds by People v. Miller,* 113 P.3d 743, 749 (Colo.2005). We conclude, therefore, that viewed in light of these instructions, the prosecutor's comments did not constitute reversible error.

The judgment is affirmed.

Judge GABRIEL and Judge RICHMAN concur.